SOL BRASH v. STATE TUBERCULOSIS BOARD, a corporation, and W. T. EDWARDS, Chairman; MRS. MURRAY L. STANLEY and J. MAXEY DELL, as members of and constituting said State Tuberculosis Board.

169 So. 218.

Opinion Filed June 13, 1936.

*Morgan F. Jones,* for Appellant;

*Emmet Safay* and *P. H. Odom,* for Appellees.

DAVIS, J.—In a previous decision rendered April 24, 1936, this Court reversed the decree of the Circuit Court of Duval County refusing to enjoin the issuance of certain certificates of indebtedness by the State Tuberculosis Board, the contention being that such certificates were in contemplation of amended Section 6 of Article IX of the State Constitution State "bonds" and therefore invalid. See: Sol Brash v. State Tuberculosis Board, 124 Fla. 167, 167 Sou. Rep. 827. Subsequent to that decision, amended proceedings were had, a new scheme of financing evolved, and a different plan of security provided for in an effort to obviate the objections found by this Court to the plan in controversy in the previous opinion hereinbefore adverted to.

The facts of the litigation now before this Court may be briefly stated as follows: Section 1 of Chapter 17649, Acts of 1935, Laws of Florida, authorizes the State Tuberculosis

Board, which is a Florida State agency created by Chapter 12284, Acts of 1927, Laws of Florida, to obtain loans from the Federal Government, or from any agency thereof, and to provide for the securing and repayment of said loans, in any manner whatsoever not inconsistent with the Constitution of Florida, particularly amended Section 6 of Article IX of the Constitution that prohibits the issuance of State bonds, except to suppress insurrection or to repel invasion.

It is proposed that the State Tuberculosis Board borrow from the Federal Government's Emergency Administration of Public Works the sum of $225,000.00, payable within twenty-six years, from 1940 to 1965, both inclusive, with interest at the rate of four per cent. per annum, payable semi-annually; that "revenue" certificates be issued for the amount of said loan, payable solely and exclusively from the revenues to be derived from the prospective operation of the Sanatorium; that the "revenue" certificates, however, be issued upon the express provision or condition affirmatively and unequivocally set forth in the authorizing proceedings and in the certificates themselves that the indebtedness represented by said certificates is "neither payable from nor a charge upon" any funds other than those pledged to the payment thereof, nor is it a charge upon any property of the State Tuberculosis Board other than the revenues and income derived from the operation of the proposed tuberculosis sanatoriums after deduction of the reasonable costs of operation and maintenance of the same, nor a charge upon the property of said State Tuberculosis Board other than the income and revenues above mentioned, nor a charge upon any property of the State of Florida.

It is specifically and in terms provided in the certificates themselves, and in the proceedings authorizing them, that neither the State Tuberculosis Board nor the State of Florida shall be subject to any pecuniary liability thereon.

It is further provided that no holder nor owner shall ever have the right to impel any exercise of the State's taxing power to pay the certificates or any of the interest thereon, nor to enforce, payment of the same against any property of the State of Florida, or of the State Tuberculosis Board, nor shall the certificates constitute a charge, lien, or encumbrance, legal or equitable, upon any property of the State of Florida, or of the State Tuberculosis Board, other than the specially pledged income and revenues hereinbefore mentioned.

To avoid the issuance of the projected debentures, the appellant filed his bill of complaint against the State Tuberculosis Board and its members and made application for a temporary injunction restraining the defendants from borrowing $225,000.00 from the Federal Government for the construction and equipment of said Tuberculosis Sanatorium, the total cost of which was estimated to be $609,-000.00, of which amount the State has appropriated in the 1927 Act the sum of $200,000.00 and the Federal Government proposes to make a grant of $184,000.00, and from executing and delivering revenue certificates on said Sanatorium or pledging all or any part of the income of said Sanatorium or in any manner pledging the credit of the State of Florida to pay said obligation.

The plaintiff applied for a temporary injunction which was denied, and the motion of the defendants to dismiss the bill of complaint was granted. From this order, appellant has appealed and has made application to this Court for a temporary injunction as prayed for in the bill of complaint.

The certificates of indebtedness as now proposed to be issued by the State Tuebrculosis Board under the scheme in controversy in this case, are the same in principle as those authorized to be issued by the State Board of Control.

The latter were recently held to be valid by this Court's decision in the case of Hopkins v. Baldwin, 123 Fla. 649, 167 Sou. Rep. 677 (opinion filed April 10, 1936).

The fact that there is no sanatorium now in existence, and that the purpose of the contemplated funding is to create one by means of financial resources to be procured on a loan based on anticipated revenue from the sanatorium to be constructed, is material but not controlling as to the validity of the undertaking.

The fundamental issue in propositions of this kind now before the Court is one of ultimate tax burden, whether mediate or immediate, present or remote. Ordinarily such an issue can only be decided in each case as it arises, especially where the border line of constitutional power and authority is closely approached as it must be in every instance where a new capital venture is proposed to be embarked upon with borrowed money procured largely on the contemplated funding of visionary expectations of revenues derivable from unproven revenue sources other than taxes.

Only where it can be clearly demonstrated beyond a reasonable doubt that a contemplated scheme of embarkation upon new capital ventures will not immediately or mediately, presently or *in futuro,* directly or contingently, operate to impose an added burden on the taxing power, or have the effect of impairing the public credit *in futuro,* will the consummation of such a debt incurring scheme be held authorized, absent the approving voice of the freeholders as required by amended Section 6 of Article IX of the Constitution, in the case of municipal, county and district enterprises. And in the case of enterprises authorized by the Legislature to be embarked upon through State agencies a particular scheme of financing will be held to be valid only where it is clearly demonstrable from the specific terms of the financing proposal itself that no tax burden, or pe-

cuniary liability of the State to appropriate or pay for the indebtedness about to be incurred, will ever arise, or be looked to as security, in whole or in part, for repayment of the borrowed moneys. Compare: Board of County Commissioners of Pinellas County v. Herrick, 123 Fla. 619, 167 Sou. Rep. 386, decided March 31, 1936, wherein a new project was in issue but the financing scheme involved was upheld as valid, under an application of the rule above stated.

Upon the consideration just stated, and upon the authority of our decision in Hopkins v. Baldwin, *supra,* we hold that neither Chapter 12284, Acts of 1927, nor Chapter 17649, Acts of 1935, nor the authorizing proceedings adopted by the State Tuberculosis Board, as reflected by the transcript of the record in this case, will result in the creation of any illegal bonded or other State debt in violation of amended Section 6 of Article IX of the State Constitution.

Should any attempt be hereafter made to have the State appropriate for, or to divert any State tax resources or revenues to, the retirement, in whole or in part, of the indebtedness represented by the revenue certificates in controversy so proposed to be issued by the State Tuberculosis Board, appropriate relief against such unauthorized and unconstitutional act may hereafter be had by any taxpayers in due course of legal procedure, if and when some overt act has transpired evidencing an intention on the part of the State Tuberculosis Board, or to the State of Florida through its Legislature, to circumvent the provisions of amended Section 6 of Article IX by unconstitutionally assuming directly or indirectly any obligation for the repayment of borowed money, with interest, that cannot be directly incurred as an obligation of the State of Florida, or be satisfied in whole or in part out of State revenues or

by a resort to State tax resources, as a means of paying such debt.

The record in the present case now before this Court indicates an affirmative intent to stay within constitutional limitations as to the obligation to be incurred. The plan proposed, if adhered to, and not exceeded, is not invalid for any of the reasons assigned in the objections argued by the appellant. Therefore, the refusal of an injunction in the court below was proper and the decree appealed from should stand.

The motion for an appellate injunction under Section 5 of Article V of the Constitution is denied and the decree appealed from is affirmed for the reasons stated in this opinion.

WHITFIELD, C. J., and ELLIS, TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs specially.

BROWN, J. (concurring specially).—I concur in the holding that the issuance of these certificates does not violate amended Section 6 of Article IX of the Constitution, which prohibits the issuance of State bonds. Manifestly these certificates, by their express provisions, are not bonds within the meaning of the constitutional provision. But there are some portions of the opinion dealing with the matters of how this section of the Constitution should be construed under facts and circumstances not now before the Court, as to which I do not think it necessary for the Court to now express its views.