HOLLIS FLINT v. DUVAL COUNTY, RAY GREENE, D. C. BROWN, J. G. CARY, J. F. HAMMOND, and RALPH T. GRAY, as members and constituting the Board of County Commissioners of said County.

170 So. 587.

Opinion Filed October 30, 1936.

20

*W. Gregory Smith* and *R. R. Axtell,* for Appellant;
*P. H. Odom* and *Julian E. Fant,* for Appellees.

EN BANC.—In a bill of complaint brought by Hollis Flint, a resident taxpayer of Duval County, it is alleged:

"II.   That the Legislature of the State of Florida, at its regular session in 1935 enacted Chapter 17246 of the Laws of Florida authorizing and providing for the construction of a bridge across the St. Johns River in the City of Jacksonville to a terminus on the south side of the river in that part of said city formerly known as South Jacksonville (hereinafter called the Main Street Bridge); that said Chapter was approved at a special election which was held on the fifth day of November, A. D. 1935, by a majority of the qualified electors participating in said election; that 8020 votes were in favor of the approval of said Chapter and 1481 votes were against the approval thereof.

"III.   That said Chapter 17246 refers to Chapter 17534 of the Laws of Florida enacted in 1935, and Chapter 7462 of the Laws of Florida enacted in 1917, both of which are essential to the proper construction of Chapter 17246.

"IV.   That the Legislature of the State of Florida, at its regular session in 1917, enacted Chapter 7462 of the Laws of Florida authorizing Duval County to construct a bridge across the St. Johns River (hereinafter called the Broad Street Bridge), providing for an election to determine whether said bridge should be a free bridge or a toll bridge and prescribing how tolls and charges should be fixed in the event a majority of the qualified electors in said county should vote for a toll bridge; that an election was held

under the provisions of said Act, bonds were issued by said county for the construction of said bridge in the sum of $950,000.00, said bonds bearing interest at the rate of five per cent. per annum, payable semi-annually, dated January 1, 1918, and due January 1, 1948, and it was determined at said election that said bridge should be a toll bridge; that the Legislature of the State of Florida at its regular session in 1921 authorized the issuance of six per cent. bonds by said county in the sum of $25,000.00, the proceeds to be used for the payment of part of the cost of said bridge; that said bridge was constructed and the entire cost thereof was paid from the proceeds derived from the sale of said bonds and said bridge was opened for traffic on July 4, 1921, and is now and since then has been continuously operated by Duval County as a toll bridge.

"V. That from July 4, 1921, to July 21, 1936, the total receipts collected as tolls and charges for the use of the Broad Street Bridge amounts to $3,543,542.14; that the total expenditures for said period for the operation, maintenance and repair of said bridge amount to $949,606.49; that the sum of $2,587,435.65 of said tolls and charges has been turned over to the trustees for said bonds and the County Commissioners retain for the operation, maintenance and repair of said bridge the sum of $16,500.00.

"VI. That from the tolls collected for the use of said bridge, all of the said second issue of bonds and all of the said first issue, except $71,000.00, had prior to August 1, 1936, been paid and cancelled. That from said tolls, the trustees for said bonds in pursuance of Chapter 16400 of the Laws of Florida, assigned to the State Board of Administration 318,000 bonds of Duval County, Florida, other than said bridge bonds to be used by said Board of Administration as a sinking fund for certain road bonds of said

county, and had purchased and cancelled other bonds of said county ;not pertaining to said bridge in the sum of $361,000.00. That after providing said sinking fund and purchasing bonds as aforesaid, said county, on August 1, 1936, had net cash on hand, after paying all costs of operation, maintenance and repair of said bridge, derived from the tolls thereon the sum of $360,283.52.

"VII. That Chapter 17534 of the Laws of Florida (Senate Bill No. 771) provided that an election be held on October 8, 1935, to determine whether the Broad Street Bridge should remain a toll bridge or whether it should be a free bridge after January 1, 1936. That said election was enjoined by the Circuit Court of Duval County, Florida, in the case of Jennings, *et al.,* v. Duval County, *et al.;* that the case was appealed to the Supreme Court of the State of Florida and affirmed as appears in 164 So. 356; that said Chapter 17534 was in said case held unconstitutional by the Supreme Court of the State of Florida.

"VIII. That on the 20th day of July, 1935, Duval County and the State Road Department entered into a contract for carrying into effect the provisions of Chapter 17246 of the Laws of Florida, a copy of which contract is hereto attached marked Exhibit 'A,' and made a part hereof to the same extent as if fully set out herein.

"IX. That in pursuance of said contract, the said State Road Department has caused a preliminary survey and plans and specifications to be made for the Main Street Bridge and approaches thereto, and has caused an estimate to be prepared of the cost of the materials and construction of the said bridge and approaches, and has filed with the Board of County Commissioners of Duval County a copy of such plans and specifications and estimated costs.

"X. That the Board of County Commissioners of Duval County has fixed the location of said bridge, and the same has been approved by the State Road Department.

"XI. That on the 10th day of October, A. D. 1936, the Board of County Commissioners of Duval County, Florida, adopted a resolution authorizing the issuance of debentures in the sum of $1,100,000.00 as authorized by Chapter 17246, which together with the grant expected to be made by the United States of America, will be sufficient to pay for the cost of the construction of the Main Street Bridge, to-wit, $1,429,000.00, exclusive of lands, easements, rights of way, franchises, riparian rights and real and personal property and rights and interests of every description necessary to provide a right of way for said bridge. A true and correct copy of said resolution is hereto attached and marked Exhibit 'B' and made a part hereof to the same extent as if fully set out herein.

"XII. That Chapter 17246 is unconstitutional and said resolution passed in pursuance thereof, is illegal and void for the following reasons:

"1. Chapter 17246 embraces two subjects, to-wit: Broad Street Bridge and Main Street Bridge.

"2. Sections 4 and 6 of Chapter 17246 provide a different method for fixing tolls from that provided in Section 5 of Chapter 7462 of the Laws of Florida.

"3. The use of moneys derived from the operation of the Broad Street Bridge for acquiring rights of way, franchises and other property for the Main Street Bridge and approaches thereto, and in constructing the necessary roads and streets leading to said bridge, and in paying interest as provided in Section 13 of said Act, is in contravention of the opinion in the case of Jennings, *et al.,* v. Duval County, *et al., supra.*

Said debentures are in effect bonds and cannot be legally issued without an election in Duval County, as provided in Section 6 of Article 9 of the Constitution of Florida, as amended in 1930.

"5.   Chapter 17246 requires that a mortgage or trustee be placed on the bridge and the approaches thereto, which is abandoned by the resolution, and the resolution is therefore in violation of the terms of said Chapter.

"6.   The operation of the Broad Street Bridge as a toll bridge in the same manner as is required of the Main Street Bridge by Chapter 17246 of the Laws of Florida is contingent on the election required by Section 11 of Chapter 17246.   Said election was enjoined as aforesaid, and therefore all provisions relating to the operation of the Broad Street Bridge for the benefit of the Main Street Bridge are unauthorized by law.

"7.   Under Section 16 of Chapter 17246, the Broad Street Bridge cannot be operated as a toll bridge after January 1, 1948, or at an earlier date if said bonds for the Broad Street Bridge are paid, or adequate provision shall have been made for their payment prior to that date.

"8.   The use of all of the proceeds from said bridges, as provided in said resolution, is in contravention of Kathleen Citrus Land Company v. City of Lakeland, reported in 169 So. 356.

"XIII.   That the defendants, unless enjoined and restrained from so doing, will carry out the terms and provisions of Chapter 17246 of the Laws of Florida, and said resolution passed in pursuance thereof, contrary to the Constitution and Laws of the State of Florida to the irreparable injury of the plaintiff.

"XIV.   That the plaintiff is without remedy except in a

court of equity. The plaintiff therefore respectfully prays as follows:

"That the defendants be required to answer this bill of complaint, but not under oath, the answer under oath being hereby specifically waived. That the Court grant the plaintiff an order temporarily enjoining and restraining the defendants from executing and delivering to the State Road Department said debentures as provided in said resolution, and that the defendants be temporarily enjoined and restrained from expending any of the moneys derived from the operation of the Broad Street Bridge for the purposes specified in Sections 13 and 14 of Chapter 17246, and that on final hearing, said injunction be made permanent."

The defendants' answer contains the following:

### "Motion to Dismiss

"The defendants move the court to dismiss the bill of complaint herein upon the following grounds:

"1. There is no equity in the bill of complaint.

"2. The plaintiff is not entitled to the relief prayed for in the bill of complaint.

"3. Chapter 17246 does not violate the Constitution of the State of Florida.

"4. Said resolution is not in contravention of the Constitution of the State of Florida.

"5. Said resolution does not violate any of the provisions of Chapter 17246 of the Laws of Florida.

"6. Said resolution does not violate any of the provisions of Chapter 17534 or Chapter 7462 of the Laws of Florida.

"7. Said resolution is in accordance with the principles announced by the Supreme Court of the State of Florida

in regard to the issuance of evidences of indebtedness without requiring the same to be submitted to the freeholders of a county for approval, as provided in Section 6 of Article 9 of the Constitution of Florida, as amended in 1930."

Decree was rendered as follows:

"This cause came on this day to be heard upon application for temporary restraining order upon the bill of complaint, and the motion of the defendants to dismiss the bill of complaint, and the same having been argued by counsel for all parties, upon consideration thereof.

"It Is Ordered, Adjudged and Decreed that said application for temporary restraining order be, and the same is, hereby denied; and that the motion to dismiss the bill of complaint be, and the same is hereby granted.

"And the plaintiff expressing the desire not to further amend the bill of complaint, and the Court considering the bill without equity, the bill of complaint is hereby dismissed.

"Done and Ordered at Chambers, Jacksonville, Florida, this 13th day of October, A. D. 1936.

"Bayard B. Shields,
*"Judge."*

Plaintiff appealed and assigned as errors the refusal of a temporary injunction and the dismissal of the bill of complaint.

Resolutions adopted by the County Commissioners contain the following: .

"Section 4.  To aid in financing the cost of the materials and the construction of the Project, there are hereby authorized to be issued revenue debentures of Duval County, herein called 'Debentures,' each to be known as 'Duval County Four Per Cent Bridge Revenue Debenture of 1936,' in the aggregate principal sum of $1,100.000.

"The Debentures shall be dated August 1, 1936, shall be in the denomination of $1,000.00 each, shall be numbered in order of their maturity from 1 to 1100, both inclusive, shall bear interest at the rate of four per cent. per annum, payable semi-annually, on February 1st and August 1st in each year, from the date thereof until maturity; shall be payable as to both principal and interest at the office of the Treasurer of the State of Florida at Tallahassee, Florida, or at the option of the holder, at the_____ New York City, New York, in such coin or currency as is, on the respective dates of payment of the principal thereof and interest thereon, legal tender for the payment of public and private debts; shall be in coupon form, shall be registerable as to the principal only at the option of the holder, and shall mature serially on August 1st in the years and amounts as follows:

| "Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1939 | $31,000 | 1950 | $47,000 |
| 1940 | 32,000 | 1951 | 48,000 |
| 1941 | 33,000 | 1952 | 50,000 |
| 1942 | 34,000 | 1053 | 52,000 |
| 1943 | 35,000 | 1954 | 54,000 |
| 1944 | 37,000 | 1955 | 56,000 |
| 1945 | 38,000 | 1956 | 58,000 |
| 1946 | 40,000 | 1957 | 60,000 |
| 1947 | 42,000 | 1958 | 63,000 |
| 1948 | 44,000 | 1959 | 65,000 |
| 1949 | 45,000 | 1960 | 67,000 |
|      |        | 1961 | 69,000 |

The Debentures shall be executed in behalf of Duval County by the signature of the Chairman of the Board of County Commissioners, shall be sealed by the corporate seal

of said Board and shall be attested by the Clerk of said Board, and the interest coupons thereto attached shall be executed by the facsimile signature of said Chairman and said Clerk.

"SECTION 5. The Debentures and coupons attached thereto shall be substantially in the following form, to-wit:

"No._____                                          $1,000

UNITED STATES OF AMERICA
STATE OF FLORIDA

"DUVAL COUNTY 4% BRIDGE REVENUE DEBENTURES OF 1936. Duval County, a political division of the State of Florida, for value received, hereby promises to pay to bearer, or, if this Debenture be registered, to the registered owner hereof solely from the net revenues and income pledged to the payment hereof, and not otherwise, the principal amount of One Thousand Dollars ($1,000) on August 1, 19____, (unless redeemed prior thereto as hereinafter provided) and to pay interest on said principal sum solely from said net revenues and income, and not otherwise, from the date hereof at the rate of four per centum (4%) per annum, payable semi-annually on February 1 and August 1st in each year, upon the presentation and surrender of the interest coupons attached hereto as they severally become due, until the maturity of this Debenture. Both the principal of and interest on this debenture are payable at the office of the Treasurer of the State of Florida in Tallahassee, Florida, or, at the option of the holder at the _____, New York City, New York, in such coin or currency as is, on the respective dates of payment thereof, legal tender for the payment of public and private debts.

"This Debenture is one of a duly authorized issue of Debentures, limited to an aggregate principal amount of $1,100,000.00 of like date, tenor and effect except as to number and maturity, issued pursuant to and in full compliance with the Constitution and Statutes of the State of Florida, particularly Chapter 17246, Laws of Florida for 1935, approved by the qualified electors of Duval County, Florida, at the special election held on November 5, 1935, and by virtue of a Resolution entitled, 'A RESOLUTION PROVIDING FOR THE ISSUANCE OF $1,100,000.00 OF REVENUE DEBENTURES OF DUVAL COUNTY, FLORIDA, TO AID IN FINANCING THE COST OF THE MATERIALS AND THE CONSTRUCTION OF A BRIDGE ACROSS THE ST. JOHNS RIVER AND APPROACHES THERETO, EXTENDING FROM MAIN STREET TO GIBSON STREET IN THE CITY OF JACKSONVILLE' duly adoted by the Board of County Commissioners of Duval County, Florida, on the_____day of_____, 1936.

"This Debenture is issued to aid in financing the cost of the materials and the construction of said bridge and approaches thereto, and is payable from a Debenture Fund into which there shall be set aside in approximately equal monthly installments, out of the net revenues and income derived from said bridge and out of net revenues and income derived from the operation of the existing bridge across the St. Johns River, heretofore constructed pursuant to Chapter 7462 of the Laws of Florida for 1917, after all bonds issued to finance the construction of said last mentioned bridge have been paid, and after provision has been made for the payment of all costs of maintenance, repairs, operation of said last mentioned bridge, such sums as shall be sufficient after provision for the payment of all costs of maintenance, repairs and operation of the bridge for the financing of which this Debenture is issued, for

the payment of the principal of and interest on the Debentures of the issue of which this Debenture is one as the same respectively shall become due. This debenture together with all other Debentures of the issue of which this Debenture is one is secured by an exclusive first lien upon all revenues and income derived from the operation of the bridge for the financing of which this Debenture is issued, after deduction only of the reasonable costs of operation, maintenance and repairs of said bridge and by a further exclusive lien upon all revenues and income derived from the operation of the existing bridge across the St. Johns River constructed pursuant to Chapter 7462 of the Laws of Florida for 1917, after all bonds issued to finance the construction of said last mentioned bridge have been paid, and after deduction only of the reasonable costs of operation, maintenance and repairs of said last mentioned bridge.

"This Debenture is not a general obligation of Duval County or a charge upon the taxable property of said County, and is not payable from or a charge upon any other funds than those pledged to the payment thereof, nor is it a charge upon any property of Duval County, other than the net revenues and income hereinabove specified, nor shall said County be subject to any pecuniary liability hereon. No holder or owner of this Debenture shall ever have the right to compel any exercise of the taxing power of the State of Florida or Duval County to pay this Debenture or the interest hereon nor to enforce payment hereof against any property of said County, nor shall this Debenture constitute a charge, lien, or encumbrance, legal or equitable, upon any property of said County, other than the net revenues and income aforesaid.

"This Debenture and the coupons attached hereto are

issued upon the following terms and conditions, to all of which each holder and owner hereof consents and agrees:

"(a) Title to this Debenture, unless this Debeuture be registered as herein provided, and to the coupons attached hereto, may be transferred by delivery in the same manner as a negotiable instrument payable to bearer; and

"(b) Any person in possession of this Debenture, unless this Debenture be registered as herein provided, or of the coupons attached hereto, regardless of the manner in which he shall have acquired possession, is hereby authorized to represent himself as the absolute owner thereof, and is hereby granted power to transfer absolute title thereto by delivery thereof to a *bona fide* purchaser, that is to say any one who shall purchase the same for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferor; every prior holder or owner of this Debenture, unless this Debenture be registered as herein provided, and of the coupons attached hereto, waives and renounces all of his equities or rights therein in favor of every such *bona fide* purchaser, and every such *bona fide* purchaser shall acquire absolute title thereto and to all rights represented thereby; and

"(c) Duval County may treat the bearer of this Debenture, unless this Debenture be registered as herein provided, or of the coupons attached hereto, as the absolute owner thereof for all purposes without being affected by any notice to the contrary.

"Duval County reserves the right to redeem and pay from any funds that may be available therefor all or any part of the issue of Debentures, of which this Debenture is one, which may be outstanding, on any interest payment date after the expiration of five years from the date of the

issuance thèreof, the Debentures to be redeemed in reverse order of maturity (selections as between Debentures of the same maturity to be by lot) at a price per Debenture equal to the principal amount thereof, plus a premium of one-fourth ($\frac{1}{4}$) of one per cent. of the principal amount for each year, or fraction thereof, from the redemption date to the stated date of maturity. In the event of redemption of all or any part of this issue of Debentures, notice shall be given by registered mail to the registered owners of the Debentures to be redeemed at their addresses appearing on the Debenture register at least thirty days prior to the redemption date, and, unless all of the Debentures to be redeemed are registered Debentures, also by publication, once a week for four consecutive weeks prior to the redemption date in a financial newspaper published daily in the Borough of Manhattan, City and State of New York, the first publication to be not more than forty-five nor less than thirty days prior to the redemption date, all as more fully provided in said resolution. If this Debenture be called for redemption, interest shall cease to accrue hereon from and after the date fixed for redemption, unless default shall be made in the payment of the redemption price upon presentation hereof prior to the sixtieth day following the redemption date, all as more fully provided in said resolution.

"The rights and duties of the County and of the holders of the Debentures and coupons, and the terms and provisions of the resolution, may be modified or altered in any respect by resolution of said Board of County Commissioners, with consent of the holder or holders of seventy-five per centum (75%) in principal amount of all the Debentures then outstanding, such consent to be evidenced by an instrument or instruments executed by such holder or holders and duly acknowledged or proved in the manner of a

deed to be recorded, and such instrument or instruments shall be filed in the office of the Clerk of the Board of County Commissioners, and shall be a public record, provided that no change of maturity date or interest rate shall be made on any Debenture without the consent of the holder thereof.

"This Debenture shall pass by delivery as hereinabove provided, but it may be registered as to principal in the name of the holder on the books of the Treasurer of the State of Florida, such registration being noted on the back hereof, after which no transfer shall be valid unless made on said books by the registered owner and similarly noted on the back hereof, but it may be discharged from registry by being transferred to bearer on the books of said Treasurer and thereafter shall be transferable by delivery, but it may be again, from time to time, registered or transferred to bearer as before. No such registration as to principal shall affect the negotiability of the coupons attached, which shall continue to pass by delivery merely.

"It Is HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required by the Constitution and statutes of the State of Florida and by the resolutions of the Board of County Commissioners to exist, to happen, and to be performed, precedent to and in the issuance of this Debenture, exist, have happened, and have been performed in due time, form and manner as required by law.

"IN WITNESS WHEREOF, the County of Duval, State of Florida, has caused this Debenture to be executed in its name by the Chairman of its Board of County Commissioners, and its seal to be hereunto affixed and to be attested by its Clerk, and the interest coupons hereto attached to be executed by said Chairman and said Clerk with their fac-

simile signatures and this Debenture to be dated the first day of August, 1936.

"COUNTY OF DUVAL, STATE OF FLORIDA,

"(SEAL)        "By_____

"*Chairman of its Board of County*

"Attest:              *Commissioners.*

_____

"*Clerk of said Board.*"

\* \* \*

"(FORM OF COUPON)

"No._____                              $20.00

"On the first day of_____, 19____, unless the Debenture herein mentioned shall have been called for previous redemption, the County of Duval, State of Florida, will pay to bearer, solely from the net revenues and income pledged to the payment hereof, and not otherwise, at the office of the Treasurer of the State of Florida in Tallahassee, Florida, or, at the option of the holder, at the_____, New York City, New York, upon surrender of this coupon, Twenty Dollars ($20.00) in such coin or currency as is, on the date of payment hereof, legal tender for the payment of public and private debts, being six months' interest on its Revenue Bridge Debentures of 1936 dated August 1, 1936, and numbered_____.

"_____

"*Chairman of Board of County Commissioners.*

"_____

"*Clerk of said Board.*"

WHITFIELD, C. J.—This appeal is from a decree denying a temporary restraining order and dismissing a bill of complaint which sought to enjoin the issue of interest bear-

ing debentures by the County Commissioners, without an approving vote of the freeholder electors of Duval County, to raise funds, and to enjoin the use of any of the county Broad Street Bridge funds, for the construction of a bridge across the St. Johns River from the foot of Main Street in the City of Jacksonville, Duval County, Florida, such construction so financed being authorized by Chapter 17246, Acts of 1935. The validity of the Act and of stated portions thereof are specifically challenged.

Pursuant to Chapter 7462, Acts of 1917, Duval County constructed and is now operating a toll bridge across the St. Johns River at Broad Street in the City of Jacksonville, Florida. See State, *ex rel.* Young, v. Duval County, 76 Fla. 180, 79 So. 692; State, *ex rel.* Landis, v. Duval County, Fla., 105 Fla. 174, 141 So. 173; *In Re*: Tolls on the St. Johns River Bridge, 108 Fla. 172, 146 So. 99; Masters v. Duval County, 114 Fla. 205, 154 So. 172; Duval County v. Jennings, 121 Fla. 584, 164 So. 356.

Chapter 17246, Acts of 1935, authorizes Duval County to construct, maintain and operate a toll bridge and approaches thereto across the St. Johns River from the foot of Main Street in the City of Jacksonville, Florida. The Act contains the following provisions:

"Section 4. Duval County, by its Board of County Commissioners, is hereby authorized and empowered to make, execute and deliver to the State Road Department its secured debentures in an amount not exceeding the estimated cost of said bridge and approaches complete, including legal fees and expenses incurred in the issuance, sale and delivery of said debentures, and the execution and delivery of the trust deed securing the same, and all legal fees and expenses and engineering costs and expenses actually incurred in connection with the financing and con-

struction of said bridge, in the form and the denominations herein provided, and to execute and deliver to the State Treasurer of the State of Florida as Trustee for the holders of said debentures a trust deed or mortgage in such form as may be approved by the attorney for the State Road Department, pledging for the payment of the principal and interest of said debentures as the same respective nature, all of the net revenues derived from the operation of said bridge as a toll bridge, and creating a first lien upon said bridge and approaches and all lands and property belonging or pertaining thereto, and providing for the payment of all such net revenues to said trustee and his successors in office, to create a fund for the payment of principal and interest of said debentures as they mature. Said debentures shall become due and payable at such time or times, not to exceed thirty years from their date, and shall bear such rate of interest, not to exceed five per cent. per annum, payable semi-annually, as may be determined by said Board and as approved by the State Road Department. Said trust deed and debentures shall be in such form and contain such provisions as may be approved by the attorney for the State Road Department and such as will make the terms thereof enforceable, and may provide in the event of default for the appointment of a receiver to operate said bridge as a toll bridge for the benefit of the owners of said debentures or the sale thereof to satisfy said debentures, but any provision for the sale of said bridge under foreclosure shall be upon condition that the purchaser shall continue to maintain and operate said bridge as a toll bridge subject to regulation as to operation and charges for tolls in the same manner as is provided in and by Chapter 7462, Laws of Florida.

"Section 5. The debentures issued under this Act shall

not be general obligations of Duval County or a charge upon the taxable property in said County, and no tax shall be levied in said County for the payment of principal or interest thereof, but the payment of the same shall be secured by the pledge of the net revenues derived from the operation of said bridge as a toll bridge and by the lien of said trust deed or mortgage herein provided for upon said bridge and its approaches constructed under this Act.

"Section 6.  Duval County, by its Board of County Commissioners, shall be authorized and empowered, upon the completion and delivery to it by the State Road Department of the said bridge and approaches, to take possession and control thereof and to operate the same as a toll bridge; to employ a Superintendent and such other employees as may be necessary for the maintenance and operation of said toll bridge and the collection of tolls; to pay all legal fees and costs, and the cost of engineering; to regulate the tolls to be charged on said toll bridge in the same manner and to the same extent as provided in Chapter 7462 of the Laws of Florida; * * * All of the costs, charges and expenses of insurance and the lighting, operation, maintenance and repair of the said toll bridge and approaches to be paid out of the proceeds of the collection of tolls; and all revenues derived from the operation thereof, after deducting the costs, charges and expenses of lighting, maintenance, repair and operation thereof, to be paid over monthly to the State Treasurer as Trustee, to be placed in a fund for the payment of interest and principal of the said debentures, and to be disbursed by said. Trustee for that purpose; Provided, that a reasonable reserve fund may be set up and maintained out of the said revenues to provide for emergencies, maintenance and repairs, and provided further that in no event shall the tolls or charges be less than shall be nec-

essary to pay said debentures and the interest thereon, and other obligations of the County in reference to said bridge. After paying all expenses of insurance, lighting, maintenance, repair and operation of said bridge, the State Road Department may, however, operate said bridge as provided in this Act.

"Section 8.  When all of said debentures issued under the provisions of this Act shall be paid, satisfied and retired, or when a sufficient fund has been created and deposited with the State Treasurer to pay off and discharge the principal and interest of all of said debentures, as and when the same mature, then the said Bridge and approaches shall be delivered by the County Commissioners of Duval County to the State Road Department and shall become and be a part of the general state road system of Florida, and shall thenceforth be maintained and operated by the State Road Department, free of all and any tolls or other charges, in the same manner as other state roads and bridges.

"Section 11.  If it is determined at the election to be held on October 8th, A. D. 1935, under the provisions of Senate Bill No. 771, approved May 21, 1935, that the present bridge across the St. Johns River in the City of Jacksonville shall be continued as a toll bridge then said present or existing bridge shall be operated in the same manner and subject to the same conditions as the bridge to be constructed at Main Street as provided in this Act, and the same tolls shall be charged on each of said bridges; and the net revenue derived from the operation of the present or existing bridge shall be used for the payment of said debentures and interest thereon and other costs as herein provided; and when all of said debentures are fully paid, or adequate provision has been made therefor, as herein provided, the present or existing bridge and the bridge to be constructed

as herein provided, shall become free bridges, and turned over to the State Road Department, a part of the State Highway System, and no tolls or charges shall thereafter be made for the use of either of said bridges.

"Section 12. In the event the present bridge across the St. Johns River is maintained as a toll bridge, tickets or tags issued or sold for the use of either bridge shall be good for the use of the other bridge.

"Section 14. All moneys derived from the operation of the present bridge across the St. Johns River in the City of Jacksonville except so much thereof as may be necessary for the repair and operation of said bridge, shall be used in acquiring rights of way, franchises and other property for the bridge at Main Street, and approaches thereto, and in constructing necessary roads and streets leading to said bridge, and, in paying interest as provided in Section 13 hereof. If the State Road Department shall assume the payment of the outstanding bonds of Duval County issued for the construction of the present bridge, all moneys placed in the sinking fund of said bonds shall be available for said purposes. None of said moneys shall be used for the payment of other bonds of Duval County unless a surplus shall remain and provision has been made for the accomplishment of the aforesaid purposes.

"Section 15. The Board of County Commissioners of Duval County is authorized to make such contract or contracts with the Federal Government or any agency thereof, or with the State Road Department, as it may deem proper for financing the cost of the construction of said bridge and approaches thereto under the provisions of this Act."

"Section 16. If either or both of said bridges shall be operated as a toll bridge, tolls on either or both, as the case may be, shall cease to be charged when the bonds or de-

bentures issued for the cost of the construction thereof shall be paid, or ample provision shall be made therefor."

The statute contemplates the construction of the Main Street Bridge by the sale of debentures issued by the county, and by the use of surplus funds of the Broad Street Bridge not needed for the full payment of the remaining outstanding bonds issued by the county for the construction of the Broad Street Bridge, the tolls to continue. A contribution from the Federal Government for the construction of the public highway bridge is anticipated as a part of the construction cost.

The resolution adopted by the County Commissioners of Duval County pursuant to Chapter 17246, provides for the issue of "Duval County Four Per Cent Bridge Revenue Debentures of 1936" and gives in full the covenants, terms and conditions of each $1000.00 Debenture, which resolution contains and each Debenture is to contain the following:

"This Debenture is not a general obligation of Duval County or a charge upon the taxable property of said County, and is not payable from or a charge upon any other funds than those pledged to the payment thereof, nor is it a charge upon any property of Duval County, other than the net revenues and income hereinabove specified, nor shall said County be subject to any pecuniary liability hereon.

"No holder or owner of this Debenture shall ever have the right to compel any exercise of the taxing power of the State of Florida or Duval County to pay this Debenture or the interest hereon, or to enforce payment hereof against any property of said County, nor shall this Debenture constitute a charge, lien, or encumbrance, legal or equitable, upon any property of said County, other than the net revenues and income aforesaid."

The title to Chapter 17246, Laws of Florida, 1935, is as follows:

"AN ACT Relating to and Authorizing the Construction of an Additional Bridge Across St. Johns River in the City of Jacksonville; and to Confer Upon Duval County the Power of Eminent Domain for Such Purpose; to Authorize the Operation of such Bridge as a Toll Bridge or a Free Bridge and the Issuance of Debentures Secured by said Bridge and the Net Revenues Thereof, to Pay the Cost of such Bridge and Approaches, Insurance, Fees, Costs and Expenses in Connection Therewith; to Authorize the State Road Department to Enter into a Contract or Contracts for the Construction, Maintenance and Operation of Such Bridge, and to Lease or Purchase the Same; to Authorize the County to Enter into Contracts with the Federal Government or Any Agency Thereof; and to Authorize the Use of Moneys Derived from the Operations of the Existing St. Johns River Bridge ·in Said City and the Future Collection of Tolls Thereon, if any, for Said Purposes."

Such title expresses only one subject "and matter properly connected" with such expressed subject. All the matters stated in the title are pertinent and germane to the subject expressed in the title; and none of them is incongruous with or disassociated from or foreign or unrelated to the subject as expressed in the title of the Act. The words, "and to authorize the use of moneys derived from the operation of the existing St. Johns River Bridge in said city and the future collecting of tolls thereon, if any, for said purposes," have relation to funds to be used in constructing the new bridge, and are not incompatible with but are properly connected with the subject expressed in the title of the Act. See Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486.

While it is necessary to express *in the title* of an Act only its subject and not matters properly connected with the subject as expressed in the title; the statement in the title of matters properly connected with the subject as expressed .in the title do not make the title violate the Constitution, the matters so stated not being misleading. See State, *ex rel.,* v. Bryan, 50 Fla. 293, 39 So. 929; Butler v. Perry, 67 Fla. 405, 66 So. 150; State, *ex rel.,* v. Thompson, 120 Fla. 860, 163 So. 270, Headnote 20.

The toll bridge over the St. Johns River authorized to be constructed from the foot of Main Street by Chapter 17246 is intended to supplement the public highway service rendered by the Broad Street highway bridge that was constructed by the county pursuant to Chapter 7462, Acts of 1917. The latter bridge and the revenues derived from its operation are the property of Duval County and may be used by the county for county purposes subject only to the rights of holders of the bonds issued for the construction of the present bridge. But revenues derived from the present bridge tolls cannot lawfully be used for purposes designed to destroy the right and duty to continue the collection of bridge tolls until the bonds are paid or otherwise legally satisfied, or their payment is duly secured. Duval County v. Jennings, 121 Fla. 584, 164 So. 356.

In authorizing the use of a portion of large surplus funds on hand, that are greatly in excess of the needs for payment of the outstanding Broad Street Bridge Bonds, in the construction of the Main Street Bridge, Chapter 17246 does not violate the obligation of the contract of the Broad Street Bridge bonds, since the toll collections continue and the surplus fund of the Broad Street Bridge revenues is not reduced below its primary uses for the Broad Street Bridge bond payments.

In the Jennings case it was proposed to abolish the tolls on the Broad Street Bridge before the bridge bonds were all fully paid. The court held the tolls could not legally be abolished before all bridge bonds were paid "unless ultimate payment of the bonds and interest be actually secured." Chapter 17246 does not authorize tolls to be abolished until all bridge bonds are paid, and the statute does not contemplate that the surplus funds of the Broad Street revenues will be so impaired as to endanger the prompt payment of the $71,000.00 of the bridge bonds now outstanding with interest according to the bond contract.

It appears that there is now in the bridge fund $360,283.62 with only $71,000.00 bonds outstanding and not due till 1948, and the tolls continue.

It also appears that the use as authorized of perhaps $225,000.00 of the surplus in the Broad Street bond funds before the maturity of the remaining bonds, will not endanger the ultimate sufficiency of the fund to pay the remaining $71,000.00 of bonds in 1948 with interest. Large sums of surplus funds derived from tolls over the Broad Street Bridge have been used to pay other bonds of Duval County, showing the adequacy of the reserve even if $225,000.00 of that fund is used for the Main Street Bridge before the Broad Street bonds are fully paid, the tolls continuing.

The pledge of funds from the surplus funds of the Broad Street Bridge revenue, is not a pledge of a tax resource, but of a toll derived from charges for the use of a special public highway utility, which charges or tolls more than pay for the construction and operation of the bridge, the surplus over operation expenses and construction bond payments being the property of the county which it may appropriate for county purposes as the law directs.

The Broad Street Bridge is, and the bridge to be built at Main Street will be, property of the county. No estate or other interest or lien in or upon the bridge property is created by the debenture contract, and the provision of the statute as to a lien upon the bridge property may be disregarded, such a lien not being by the statute mandatorily made a part of the pledge of the debentures authorized to be issued.

If the provision in Section 4 of Chapter 17246 for the appointment of a receiver in case of default in payment of the debenture, is invalid or inoperative, it does not affect the remainder of the Act; and if invalid or inoperative may be disregarded or treated as eliminated. The statute provides that tolls to be collected for bond payments are to be regulated by a Circuit Judge as under Chapter 7462, Laws of Florida, which insures the stability of ample toll receipts if the bridge is operated in conjunction with the present Broad Street Bridge of the county, as provided by Chapter 17246.

The pledge of the net receipts from tolls on the Broad Street Bridge to the payment of the debentures issued for funds to construct the Main Street Bridge, after the Broad Street Bridge bonds are fully paid or duly secured, is a proper application of such county funds as authorized. Such funds are not tax resources but toll receipts that belong to the county accruing from its operation of a public highway utility; and their appropriation by statute to pay debentures issued for the construction of a companion highway bridge, does not make the debentures violate amended Section 6 of Article IX of the Constitution. See Ala. St. Br. Corp. v. Smith, 257 Ala. 311, 116 So. 695.

The Main Street Bridge, though regarded as a new project, is not the only such utility in the county. The new bridge

is to be used in co-ordination with the present bridge as a necessary self-liquidating highway bridge. The debentures issued for the construction of the new bridge are not bonds of the county within the contemplation of amended Section 6, Article IX, of the Constitution, because the debentures are not to be paid by tax resources or by the pledge of any property of the county except receipts from tolls; and if tolls prove inadequate, taxation cannot be resorted to. The old bridge is to be operated in co-ordination with the new bridge to serve a county purpose common to both bridges, the tolls from the present bridge to be used primarily to pay the bonds of that bridge. The bridge properties are not subject to payment of the debentures, and the county is not subjected to contingent liabilities. See Br. of Commrs. Pinellas Co. v. Herrick, 123 Fla. 401, 167 So. 386.

In Kathleen Citrus Co. v. Lakeland, 124 Fla. 659, 169 So. 356, resources affecting corporeal property rights were attempted to be pledged without an approving vote of the freeholder electors of the city; and besides the *city* might be subject to contingent contract and tort liability. See also Boykin v. Town of River Junction, 121 Fla. 902, 169 So. 558; Charles v. City of Miami, 125 Fla. 110, 169 So. 589, and other similar cases. Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677, and Brash v. Tuberculosis Bd., 124 Fla. 652, 169 So. 218, dealt with *State* projects. In such State cases the doubt is resolved in favor of the authority conferred by the statute to issue revenue certifica'es. See Williams v. City of Dunnellon, 125 Fla. 114, 169 So. 631.

In Hygema v. City of Sebring, 124 Fla. 683, 169 So. 366, there was no utility in the city of a similar character to the then proposed project; and being a new kind of utility in the city, it might impose upon the *city* contingent liabilities of contract *and tort* not theretofore assumed by the city by

similar utilities being operated by the city. The self-liqui-
dating qualities of the project in that and like cases not being
demonstrated, the doubt required an approving vote of the
freeholder electors. See Williams v. City of Dunnellon, 125
Fla. 114, 169 So. 631. In State v. Calhoun County, the
statute expressly authorized the issue of bonds, and the
bridge was to be pledged for payment of the bonds, with-
out an approving vote of the freeholder electors of the
county as required by amended Section 6, Article IX of
the Constitution.

The controlling purpose of amended Section 6, Article
IX of the Constitution is that, except upon the stated ap-
proval vote of the freeholder electors of the taxing unit,
the taxing power or the tax resources of a taxing unit
shall not be pledged; and that the property or any interest
therein of the taxing unit, shall not be pledged by any
county, district or municipality, when such property is ob-
tained through taxation; and that property obtained other-
wise than through taxation, may not be pledged when, if
improvidently used, such property must be replaced or com-
pensated for through taxation.

In this case no taxing power or tax resource of the county
is authorized, but is forbidden to be pledged for the con-
struction or the operation of the Main Street Bridge. No
property or interest in property of the county obtained
through taxation is pledged for the expense of construc-
tion or operation of the bridge; and no property of the
county, e. g. bridge tolls, obtained otherwise than by taxa-
tion can be replaced or compensated for through taxation if
it is improvidently pledged or used for construction of the
bridge. The entire expenses of the construction and of
the operation of the bridge, including contingent liabilities,
if any, may arise against the *county,* in such construction or

operation of the highway bridge, are to be paid from, and only from, the tolls collected for passage over, or other lawful use of, the bridge constructed, operated and maintained by the county as a necessary special highway utility.

The Broad Street Bridge does, and the Main Street Bridge will, belong to the county and Chapter 17246 requires tolls to be collected on both bridges until both are fully paid for. The bridges co-ordinate in supplying and operating a necessary public highway special facility; and it appears that by the co-ordination the new bridge will be fully paid for by tolls, taxation being expressly excluded. The use of tolls from the present bridge is expressly subordinated to the full payment of the entire indebtedness for that bridge.

No election was held under Senate Bill No. 771, Chapter 17534, Special Acts of 1935, as referred to in Section 11 of Chapter 17246, Acts of 1935 (Duval County v. Jennings, see 121 Fla. 584, 164 So. 356) and $71,000.00 of Broad Street Bridge bonds being outstanding and not due till 1948, the provisions of Chapter 17246 authorizing the limited use of surplus funds of the Broad Street Bridge for construction costs of the Main Street Bridge, are not necessarily so repugnant to the provisions of Section 16 of Chapter 17246 as to render such appropriation of surplus funds nugatory or to require the present bridge to be operated as a free bridge under Section 16 of Chapter 17246, Acts of 1935.

Further discussions of matters incidental to those herein adjudged, is not essential to the disposition of the appeal herein.

Affirmed.

ELLIS, P. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

BROWN, J. (concurring).—While I do not think the decision in this case can be reconciled with some of our previous opinions and decisions, involving the pledge of the net revenues of self-liquidating projects, where the certificates or debentures expressly negative the right to use the taxing power to pay the same wherein it was held that they were. invalid without an election (in most of which the writer dissented), I consider the present decision a sound and correct one and supported by the holdings in the majority of our previous cases dealing with the general subject.