STATE, Appellant, v. DADE COUNTY, Appellee.

200 So. 848

En Banc

Opinion Filed March 1, 1941

G. A. Worley, for Appellant;

Hudson & Cason, for Appellee.

TERRELL, J.—Pursuant to Chapter 19474, Acts of 1939, Chapter 19760, Special Acts of 1939, and Chapter 17176, Acts of 1935, as amended by Chapter 18070, Acts of 1937, the Board of County Commissioners of Dade County adopted Resolution No. 1330 authorizing the issuance of $4,000,000 Causeway Revenue Bonds dated March 1, 1941, for the purpose of financing the construction of a causeway over Biscayne Bay on a self-liquidating basis. The resolution also provided for the execution of a trust agreement between the county and Miami Beach First National Bank to secure payment of the bonds. This appeal is from a final decree validating said bonds.

It is first contended that the causeway revenue bonds including the resolution for their issue is violative of Section 6, Article IX, of the Constitution because it proposes to issue them without an approving vote of the freeholders.

To sustain this contention, appellant relies on Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558, and like cases. We do not think this line of cases rules the instant case. It appears from the acts and resolution authorizing the bonds as well as the form of the bonds fixed by the trust agreement that (1) all principal and interest on them is payable from net revenues of the

causeway, (2) the law, the resolution, the trust agreement and the face of the bonds already alluded to provide that neither the county nor the taxpayers shall be bound in any sense whatever for the payment of the bonds or the interest thereon, (3) the bonds shall not be secured by a mortgage or lien of any kind on the causeway or any of its physical properties. In the event of default in payment of the bonds or the interest on them, the bond holders have no recourse except against the revenues of the causeway, (4) the entire cost of the causeway including real estate franchises, rights of way incident to the cost of construction, equipment, and placing it in operation shall be paid from the proceeds of the causeway revenue bonds, (5) the causeway including maintenance, operation, principal and interest on the bonds must be self-liquidating from the income derived from tolls or charges for use.

In view of this factual showing, there being no obligation on the tax revenues of the county to service the bonds or to support and maintain the causeway, we think this question is concluded contrary to the contention of appellant by Flint v. Duval County, 126 Fla. 18, 170 So. 587; Kinsey v. Walton County Bridge Authority, 136 Fla. 204, 186 So. 418, and like cases.

It is next contended that Resolution 1330 and that part of the trust agreement authorizing a portion of the proceeds of the bonds to (1) pay insurance on the causeway during construction and for three years thereafter, and (2) create an insurance fund in the sum of $50,000 for the payment of damages to the causeway not covered by other insurance is violative of Section 5 of Chapter 17176, Acts of 1935, which is as follows:

"In determining the cost of any public works project, the following items may be included as a part of the cost of such public works project and financed by the issuance

of the bonds: (a) engineering, inspection, accounting, fiscal and legal expenses; (b) the cost of issuance of the bonds, including engraving, printing, advertising, and other similar expenses; (c) any interest costs during the period of construction of such public works project and for six months thereafter on money borrowed or estimated to be borrowed."

Both the items brought in question involve different species of insurance on the project during and immediately following construction. It is quite true that insurance is not in terms included as one of the items of expense in such a project but in view of the size and amount involved and the peculiar hazards incident to the public works of this kind in that area, we think insurance of the type named may in the interest of safety be included as a "fiscal and legal expense" of the project. It is now considered good business to carry such insurance; in fact, no cautious man would undertake such a project without it. It is considered as a part of the general and necessary expense of the project.

Affirmed.

BROWN, C. J., WHITFIELD, BUFORD, CHAPMAN and ADAMS, J. J., concur.

THOMAS, J., not participating.