**THE STATE OF FLORIDA v. ESCAMBIA COUNTY, FLORIDA**

14 So. (2nd) 576
July 8, 1943

June Term, 1943
Division A

*J. Edwin Holsberry* and *Phillip D. Beall,* for appellant.
*Jones & Latham,* for appellee.

CHAPMAN, J.:

The Boards of County Commissioners of Escambia and Santa Rosa Counties, Florida, pursuant to Chapter 12720, Special Acts of 1927, Laws of Florida, as amended by Chapter 14030, Special Acts of 1929, Laws of Florida, adopted a joint resolution, thereby granting an exclusive franchise to Johnson, Drake and Piper, Inc., a corporation, to build, construct, maintain and operate a toll bridge, and upon its completion to be used in connection with the public roads and highways of the aforesaid counties. The contemplated bridge was to cross over a sheet of water commonly known as Pensacola Bay. It was to extend from Santa Rosa Peninsular in Santa Rosa County, Florida, to the mainland in Escambia County, Florida, at a point east of Muscogee Wharf in the City of Pensacola, Florida.

Johnson, Drake and Piper, Inc., sold, transferred and assigned the franchise rights, powers and privileges possessed by it to the Pensacola Bridge Corporation. The plans of construction of the bridge were approved, recommended and subsequently authorized by the Secretary of War, pursuant to Act of Congress. The bridge was constructed by the Pensacola Bridge Corporation according to the proposed plans and specifications, and the title to the bridge and franchise, and all rights and privileges incidental thereto, rested in the Pensacola Bridge Corporation.

Section 5 of Chapter 21216, Special Acts of 1941, Laws of Florida, authorized the Board of County Commissioners of Escambia County to acquire by purchase or condemnation proceedings the aforesaid bridge, title to which rested in the Pensacola Bridge Corporation. Condemnation proceedings were instituted in the Circuit Court of Escambia County, Florida, against the Pensacola Bridge Corporation to acquire title and ownership of the aforesaid bridge. Trial was had and a verdict and judgment entered fxing the total compensation, with costs, of the bridge at the sum of $1,345,000.00. Counsel for Escambia County and the Pensacola Bridge Corporation, by stipulation filed in the lower court, agree that said sum should be paid within sixty days after May 18, 1943.

On May 20, 1943, the Board of County Commissioners of Escambia County adopted a resolution authorizing the acquisition of the toll bridge across the Pensacola Bay, connecting Escambia County with Santa Rosa County, and the issuance of bonds under the several provisions of Chapter 21216, Special Acts of 1941, Laws of Florida, known and cited as the Escambia County Bridge Revenue Bond Act, the title of said resolution is viz: "A resolution authorizing the acquisition of the existing toll bridge across Pensacola Bay connecting Escambia County with Santa Rosa County, and the issuance, under the provisions of the Escambia County Bridge Revenue Act, of bridge revenue bonds of the county, payable solely from bridge revenues, to pay the cost of such acquisition; providing for the fixing and collecting of tolls and charges for the use of the bridge; providing for the application of bridge revenues and for the creation of certain funds; and providing for the remedies of the holders of such bonds."

Section 101 of Article I of the adopted resolution is viz:

"Section 101. Under the authority of the Escambia County Bridge Revenue Bond Act, the acquisition of the bridge is hereby authorized and, for the purpose of paying the cost of the bridge, there shall be issued bridge revenue bonds of the County of Escambia (hereinafter sometimes called the 'bonds') in the aggregate principal amount of One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00).

"The principal of and the interest on all of the bonds shall be payable solely from the special fund hereinafter created and designated the 'Pensacola Bay Bridge Sinking Fund' and all of the covenants, agreements and provisions of this Resolution shall be for the benefit and security of all and singular the present and future holders of the bonds and interest coupons so issued, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issue, sale or negotiation, or otherwise."

Section 102 of Article I, in part, provides:

". . . . The bonds shall mature in numerical order, lowest numbers first, as follows: $50,000 on May 1 in each of the

years 1948 to 1950, inclusive, and $100,000 on May 1 in each of the years 1952 to 1964, inclusive. The bonds which mature on and after May 1, 1955, shall be redeemable prior to their respective maturities at the prices and dates and upon the terms hereinafter set forth. . . ."

Section 103 of Article I, in part provides:

"The bonds which mature in the years 1955 to 1959, inclusive, may be redeemed on May 1, 1954, or on any interest payment date thereafter prior to their respective maturities, at the option of the County, at the principal amount thereof and accrued interest together with a premium of 3½% of the principal amount thereof if redeemed in the year 1954, a premium of 3% if redeemed in the year 1955, a premium of 2½% if redeemed in the year 1956. a premium of 2% if redeemed in the year 1957, a premium of 1½% if redeemed in the year 1958, and without premium if redeemed in the year 1959. The bonds which mature in the years 1960 to 1964, inclusive, may be redeemed on May 1, 1958, or on any interest payment date thereafter prior to their respective maturities, at the option of the County, at the principal amount thereof and accrued interest together with a premium of 3½% of the principal amount thereof if redeemed in the year 1958, a premium of 3% if redeemed in the year 1959, a premium of 2½% if redeemed in the year 1960, a premium of 2% if redeemed in the year 1961, a premium of 1½% if redeemed in the year 1962 and a premium of 1% if redeemed in the year 1963."

Section 103 of Article I also in part provides:

"This bond shall not be deemed to constitute a debt of the County or any other county, city or town in the State of Florida, and the County is not obligated to pay this bond or the interest thereon except from revenues, and neither the faith and creditor of the County or any other county, city or town in the State of Florida are pledged to the payment of the principal of or the interest on this bond, but the principal of this bond and the interest thereon are payable solely from the special fund provided therefor from tolls and revenues of the bridge hereinafter mentioned. No holder of this bond shall ever have the right to compel any exercise of taxing power on the part of the County or of any other

county, city or town of the State of Florida to pay this bond or the interest thereon, nor to enforce such payment against any property of the County or of any other county, city or town, and this bond shall not constitute a charge, lien or encumbrance, legal or equitable, upon any such property."

Sections 302 to 308, both inclusive, of Article III provide that Escambia County shall provide a schedule of tolls for transit over the bridge—that the tolls will be classified in a reasonable way so as to cover all traffic falling within a reasonable class and that no reduction of tolls shall be allowed within any such class. The tolls shall be collected by the County and duly deposited to the credit of a special fund designated as Pensacola Bay Bridge Revenue Fund.

It is also provided that the cost of operating the bridge shall be paid out of a designated fund. The payments from the maintenance fund shall be made by checks signed by the chairman and the clerk of the board. Provisions exist for the transfer of the several funds or accounts to the credit of the Pensacola Bay Bridge Sinking Fund. Section 301 of Article III of the Resolution provides that in the event the bridge shall be leased to the State Road Department of the State of Florida, as set forth under Article VI of the resolution then Sections 302 to 308, inclusive, shall not be in operation.

Article VI of the Resolution is viz:

"Section 601. As authorized by Section 14 of the Escambia County Bridge Revenue Bond Act, the Board may lease the bridge to the State Road Department of the State of Florida, for a period continuing so long as any of the bonds issued under the provisions of this Resolution shall be outstanding, upon such terms and conditions as may be agreed upon by the Board and the State Road Department; however, that any such lease shall contain the following agreements and covenants to be performed by the State Road Department:

"(a) That it will at all times maintain the bridge in good repair and in sound operating condition and will make all necessary repairs, renewals and replacements.

"(b) That it will at all times keep the bridge insured in

accordance with the provisions of Section 503 of Article V of this Resolution, and will perform all of the covenants and agreements contained in said Section 503.

"(c) That it will make rental payments solely from funds available for such purpose under the provisons of Section 16 of Article IX of the Constitution of Florida, which Section was adopted at the general election in November, 1942, in amounts sufficient to pay the principal of and the interest on all bonds issued under the provisions of this Resolution as such principal and interest shall become due, such rental payments to be made to the county for the credit of the Sinking Fund."

The resolution, *supra,* as adopted, contains many other important provisions unnecessary to recite in order to dispose of the questions here presented. Two methods of retiring the maturing bonds and accrued interest are set out in. the resolution. One method is for the County of Escambia to establish a schedule of tolls payable by transit and the money arising therefrom used to retire the bonds and interest; while the other method (optional with the Board of County Commissioners of Escambia County) is to lease the bridge to the State Road' Department of Florida, as provided for in Section 14 of Chapter 21216, Special Acts of 1941, Laws of Florida. Chapter 20555, Acts of 1941, Laws of Florida, authorizes the State Road Department to enter into such a lease with the several political subdivisions of Florida. From an order of validation an appeal has been perfected here.

It is contended that the Board of County Commissioners of Escambia County is without authority to issue $1,450,000.00 in bonds without an approval thereof at an election to be held in which the freeholders of Escambia County shall participate, as enumerated and set forth by the several provisions of Section 6 of Article IX of the Florida Constitution adopted November 4, 1930. It is not contended that the bonds carry with them the pledge or obligation of the taxing powers of the County of Escambia. The bonds or certificates of indebtedness to be issued are payable out of the income from the bridge, if the Board of County Commissioners elect to operate the same under the toll system, or from the rents arising

from a lease thereof to the State Road Department, provided such a course is pursued. In either event both principal and interest of the bonds or certificates of indebtedness are payable from the net revenues derived from the operation of the bridge. The bonds or certificates of indebtedness do not create, or purport to create, a general obligation on the County of Escambia enforceable by the levy of an ad valorem tax. The approval of the freeholders of Escambia County is not required under Section 6 of Article IX of the Florida Constitution. See State and Diver v. City of Miami, 113 Fla. 280, 152 So. 6; State v. Dade County, 146 Fla. 331, 200 So. (2nd) 848; State v. Florida Keys Aqueduct Comm., 148 Fla. 485, 4 So. (2nd) 662; Board of County Comm'rs. of Pinellas County v. Herrick, 123 Fla. 619, 167 So. 386; Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677; Brash v. State Tuberculosis Board, 124 Fla. 652, 169 So. 218; Flint v. Duval County, 126 Fla. 18, 170 So. 587.

The power and authority to make a legal and binding lease of the bridge for a term of years on the part of the County of Escambia and the State Road Department of Florida is here challenged. Article VI of the Resolution provides for and authorizes such a lease. The answer to this contention is Section 14 of Chapter 21216, *supra;* Chapter 20555, Acts of 1941, Laws of Florida; Subsection (c) of Section 16 of Article IX of the Constitution of Florida, adopted at General Election in 1942.

We fail to find error in the record and accordingly the decree of validation appealed from is hereby affirmed.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.