E. L. WILLIAMS v. THE TOWN OF DUNNELLON, *et al.*

169 So. 631.
Opinion Filed Auugst 3, 1936.

116

*D. Niel Ferguson,* for Appellant;
*W. E. Smith,* for Appellee.

WHITFIELD, C. J.—This appeal is from a decree dismissing the bill of complaint herein which seeks to enjoin the issue of water revenue certificates by the Town of Dunnellon. It is in effect alleged among other matters not necessary to be here stated in view of the decree of validation, that $14,000.00 of water revenue certificates to be issued by the Town of Dunnellon, Florida, for the purpose of making stated proposed improvements and extensions to an existing waterworks system owned and operated by the Town of Dunnellon in its proprietary capacity since the year 1909, have been validated by the circuit court; but that such water revenue certificates are in legal effect bonds of the Town of Dunnellon, and as they have not been approved by the freeholder electors of the town, the issue of such certificates would violate Section 6 of Article IX of the Florida Constitution as amended in 1930, notwithstanding the decree of the circuit court validating the water revenue certificates. See Weinberger v. Board, 93 Fla. 470, 112 So. 253; Boykin v. Town of River Junction, filed June 17, 1936.

The certificates state upon their face that they are payable "solely from the bond fund provided therefor"; and that the ordinance under which the certificates were issued, "provides that the Town shall fix and maintain rates and collect charges for the facilities and services afforded by the water supply system, which will provide revenues sufficient at all times, to pay the cost of operation, maintenance and repairs of said system, and to pay into the Bond Fund created and designed by said ordinance as 'Water Revenue Certificate Sinking Fund,' a sufficient amount of Revenue over and above such cost of operation, maintenance, and repairs, to pay the interest on, and the principal of said certificates as the same respectively become due."

The ordinance contains the following:

"Section 5. The water supply system of the Town shall be operated on a fiscal year basis, commencing on the first day of each year and ending on the December 31, following:

"From and after the effective date of this Ordinance, all of the revenue derived from the operation of said water supply system shall be deposited as received into an account designated 'Water Revenue Account' (hereinafter called the 'Revenue Account') and the monies in said Revenue Account shall be set aside into separate and special funds, as follows:

"(a) Operation, Maintenance, and Repair Fund: There is hereby created and established the fund designated 'Water Operation, Maintenance and Repair Account' (hereinafter called the 'Operation Account') into which there shall be paid out of the Revenue Account a sufficient amount during each month to provide for the reasonable current expenses of operation, maintenance, and repairs of the water supply system.

"(b) Water Revenue Certificates Sinking Fund: There is hereby created and established a 'Water Revenue Certificates Sinking Fund' (hereinafter called the 'Bond Fund') into which shall be paid in approximately equal monthly installments during each fiscal year after making the above required payments into the Operation Account, an amount equal to one hundred per cent. (100%) of the amount required to pay:     "1. The next maturing installment of principal of any of said certificates.

"2. The interest payments to fall due on all outstanding certificates up to and including the date of the next maturing installments of principal of any of said Certificates and,

"3. An amount at least equal to twenty per centum

(20%) of the sum of the amount required by (1) and the amount required by (2) in order to provide a reasonable reserve in such bond Fund. The payments required by (3) shall be continued until there is in said Bond Fund an amount sufficient to meet the next maturing installment of principal of any of said Certificates and the interest payments due on all outstanding Certificates up to and including the date of the next maturing installment of principal of any of said Certificates* and the principal and interest payments to fall due during the next two fiscal years thereafter. No payment need be made into the Bond Fund if, and when, the amount in such Bond Fund is at least equal to the aggregate principal amount of interest then due or thereafter to become due on said Certificates.

"If in any month for any reason there shall not be paid into said Bond Fund the amounts required by this Section, then an amount equal to such deficiency in the amount required to be paid into said Bond Fund in such month shall be added to the amount otherwise required to be paid into said Bond Fund during the next succeeding month.

"The monies in said Bond Fund shall be used solely for the purpose of paying the principal of, and the interest on, the Certificates and for no other purpose. All monies in said Bond Fund shall be deposited in a bank, or banks, which are members of the Federal Reserve System and shall be continually secured by direct obligations of the United States of America which obligations shall be at all times at least equal to the amount of monies in said Bond Fund in Market Value.

"Section 7. The Town hereby covenants and agrees with the holders of such certificates that while any of the certificates or coupons issued hereunder are outstanding and unpaid:

"(a) The Town will maintain the water supply system in good condition, and operate the same in an efficient manner and at a reasonable rate.

"(b) The Town shall fix and maintain rates and collect charges for the facilities and service afforded by the water supply system which will provide revenue sufficient at all times to pay the cost of operation, maintenance, and repairs of said system and to maintain the Bond Fund as hereinbefore provided by Section 6 (b) hereof.

"(c) The Town will not issue any additional obligations payable from the revenues of said system unless the lien of such obligation on the revenues of said system is made junior and subordinate in all respects to the lien of the Certificates issued hereunder, and that it will not sell, mortgage, lease or otherwise dispose of or encumber any property essential to the proper operation of the water supply system.

"(d) The Town will maintain insurance on the water supply system of the kind and in an amount which usually would be maintained by private corporations owning and operating a similar undertaking.

"(e) The Town will keep proper books of record and account, separate from all other records and accounts, in which complete and correct entries shall be made in accordance with standard principles of accounting, of all transactions relating to the system.

"The Town shall furnish to any holder of any of the Certificates at the time outstanding, at the written request of such holder, not more than thirty days after the close of each six monhs fiscal period, complete operating and income statements of the system in reasonable detail, covering such six months period, and not more than sixty days after the close of each fiscal year complete financial state-

ments of the system in reasonable detail covering such fiscal year and certified by independent auditors if so requested.

"(f) Any holder of any certificate issued hereunder shall have the right at all reasonable times to inspect the system and all records and accounts thereof.

None of the foregoing covenants shall be construed as requiring the Town to expend any funds other than the revenues derived from the operation of the water supply system.

"Section 8. No taxes shall ever be levied and no monies shall ever be taken or diverted from any funds of the Town for the payment of the principal or interest on the Certificates issued hereunder." * * *

"The net revenue of such water supply system during the last five fiscal years has amounted to the following sums:

"For fiscal year ending Dec. 31, 1931, Net
    Revenue _____$1,617.93
For fiscal year ending Dec. 31, 1932, Net
    Revenue _____ 1,397.74
For fiscal year ending Dec. 31, 1933, Net
    Revenue _____ 2,317.10
For fiscal year ending Dec. 31, 1934, Net
    Revenue _____ 2,643.04
For fiscal year ending Dec. 31, 1935, Net
    Revenue _____ 3,253.24

"And the revenue of said Town has not been pledged either in whole or in part to the payment of any outstanding bonds or other obligations of the Town. The estimated net revenue of said system in each fiscal year after the construction of the additions and extensions to said system

hereinafter referred to, is in excess of the amount to become due in each fiscal year for principal and interest on the Certificates hereinafter provided for."

The question presented is whether the issue of the stated water revenue certificates by the Town of Dunnellon would violate Section 6, Article IX of the Constitution as amended in 1930.

"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the counties, districts or municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts, or municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this law shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such counties, districts, or municipalities. (Amended, Senate Joint Resolution 26, Acts 1929; adopted at general election of Representatives held November 4, 1930.)" Sec. 6, Art. IX, Constitution, as amended in 1930, p. 3408, Vol. 6, Perm. Supp. to C. G. L.

The main purpose of the above quoted organic amendment was, and is, to prevent the unnecessary and extravagant borrowing of funds for public uses by the counties, districts or municipalities of the State, with particular reference to tax burden assumptions.

The controlling effect of amended organic Section 6, Article IX, upon the issue of "State bonds," is in some respects quite different from its effect upon the issue of county, district or municipal bonds.

State bonds can legally be issued under statutory authority only for the purpose of repelling an invasion of the State or of suppressing insurrection in the State, no approving vote of the electors being required for issuing "State Bonds" upon legislative authority for the two defined State purposes; but "State bonds" cannot legally be issued for any purpose whatever other than for repelling invasion or suppressing insurrection in this State. Advisory Opinion to the Governor, 94 Fla. 967, 114 So. 850.

County, district or municipal bonds may be issued for any appropriate and legal county, district or municipal purpose as may be authorized by law; provided the issue of such county, district or municipal bonds is first approved by the requisite vote of freeholder electors as specifically provided by Section 6, Article IX, of the Constitution as amended in 1930. See City of Jacksonville v. Renfroe, 102 Fla. 512, 136 So. 254.

The adoption in 1930 of the amendment to Section 6 of Article IX of the Constitution, in view of then existing conditions in municipalities, *necessarily contemplated* that public health, safety, and physical economic human necessity, might imperatively and unavoidably require *then existing* public utilities or facilities that are *essential* to public health and safety, and to the physical and economic necessity of the community, and not *merely desirable or convenient* to serve the community or to public welfare, should be *continued, maintained* or *improved* or *extended* to meet immediate and imperative public needs; and that if *necessary* to preserve or improve the service, and no other means are attainable, the *net income* received from such *existing and continued* or *improved necessary* utility or facility may, without an approving vote of the freeholder electors, be anticipated and pledged for funds to maintain

and continue, or to make *imperatively necessary* improvements or extensions of, such *existing* public utility or facility, when a sufficient earning capacity of the utility or facility is shown, and no new or additional tax, charge or lien is imposed and no property or new or increased taxing resource of the unit is directly, indirectly or contingently pledged or used for the continuance, improvement or extension of *an existing necessary* public utility or facility, but payment of the funds borrowed for making the improvements or extensions are expressly confined to the net receipts from the operation of the utility or facility, a tax or property liability or charge being expressly excluded. State v. City of Miami, 113 Fla. 280, 152 So. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. 924; State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300; Wilson v. City of Bartow, 124 Fla. 356, 168 So. 545; State v. City of Clearwater, 124 Fla. 354, 168 So. 546; State v. City of Punta Gorda, 124 Fla. 512, 168 So. 835; Leon County v. State, 122 Fla. 505, 165 So. 666; Tapers v. Pichard, 124 Fla. 549, 169 So. 39; Roach v. City of Tampa, 125 Fla. 62, 169 So. 627; Boykin v. Town of River Junction, 124 Fla. 827, 169 So. 492; State, *ex rel.* City of Vero Beach, v. MacConnell, Number 1, 125 Fla. 130, 169 So. 628.

But if funds are to be borrowed for the acquisition of a *new* municipal project, utility or facility, which was not in use when the organic amendment was adopted, or if any municipal property or tax resource, other than the net receipts derived from the operation of the public utility or facility, is to be in any way whatever pledged or used for the acquisition of a new project, utility or facility, or for the maintenance, improvement or extension of an *existing* public facility or utility, no instruments evidencing indebtedness for such borrowed funds, can legally be issued by or

for the State if the instruments are in legal effect "State bonds," Brash v. State Tuberculosis Bd., 124 Fla. 167, 167 So. 827; Sholtz v. McCord, 112 Fla. 248, 150 So. 234, or be issued by or for a county, district, or municipality, under statutory authority, until after an approval vote of the freeholder electors of the unit as mandatorily required by Section 6, Article IX of the Constitution as amended in 1930, relative to the issue of bonds by counties, districts and municipalities. Herbert v. Thursby, 112 Fla. 826, 131 So. 385; Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558; Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356; Hygeman v. City of Sebring, 124 Fla. 683, 169 So. 366; Leon County v. State, 122 Fla. 505, 165 So. 666.

State bonds can be issued only for repelling invasion or suppressing insurrection.

If a reasonable doubt exists as to whether an existing public facility to be improved or extended is *essential* to the public health, safety or economic security of the community, *and not merely* desirable or convenient, the issue of county, district or municipal obligations therefor should have the approval of the freeholder electors of the unit as is expressly required by amended Section 6, Article IX, see Charles v. City of Miami, decided at this term.

If a reasonable doubt exists as to whether statutory obligations to be issued by or for the State, are in legal effect "State bonds," the doubt should be resolved in favor of the statute. Brash v. State Tuberculosis Board, 124 Fla. 652, 169 So. 218; Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677.

The illegal, improper or extravagant use of funds legally borrowed for; or otherwise acquired for, public pur-

poses or uses, may be enjoined or redressed by due course of judicial proceedings.

Where money is legally borrowed by a political unit of the State to be paid solely and only from the next receipts from the operation of a public utility or facility, there is generally an express provision, and always an implied provision, that no tax resource or property of the unit other than such net operating receipts, shall be liable or used for the payment of the borrowed money; and it has been adjudicated that the illegal levy of taxes or the illegal use of any tax resources or any other property of the unit except the duly authorized use of the net receipts from the utility or facility acquired or improved or extended by the use of the borrowed funds, may be enjoined at the suit of a taxpayer of the appropriate unit.

A State statute should be adjudged to be unconstitutional only when, beyond all reasonable doubt, it violates some identified provision of the Constitution. But when a statute clearly violates organic law and it is so adjudged, such statute is rendered inoperative by the dominant legal force of the Constitution.

A statute authorizing the issue of any instruments as evidence of indebtedness to be paid by the State in the future, should not be adjudged to violate Section 6 of Article IX of the Constitution, unless it clearly appears beyond reasonable doubt that the instruments so authorized to be issued are in legal effect "State bonds" to be issued for a purpose other than for "repelling invasion or suppressing insurrection." Hathaway v. Munroe, 97 Fla. 28, 119 So. 149; Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677; Brash v. State Tuberculosis Board, 124 Fla. 652, 169 So. 218.

When a statute which by its terms or its legal effect or

its operation, purports to authorize the issue of any instruments as evidence of indebtedness to be paid by the State in the future, and such instruments in legal effect are "State bonds" issued for a purpose other than for "repelling invasion or suppressing insurrection," such statute violates Section 6, Article IX of the Constitution as amended in 1930, and is inoperative; and the issue of such instruments, being illegal, may be enjoined. Advisory Opinion, 94 Fla. 967, 114 So. 850; Sholtz v. McCord, 112 Fla. 248, 150 So. 234; Brash v. State Tuberculosis Board, 124 Fla. 167, 167 So. 827. See also State, *ex rel.*, v. Green, 95 Fla. 117, 166 So. 66.

Any instruments evidencing a county, district or municipal indebtedness for providing a *new* project or to be paid by a tax levy or by an assessment or charge or the pledge of property or a tax resource of the subordinate governmental unit, may in legal effect be "bonds," under Sec. 6, Art. IX, Constitution, requiring the approving vote of the freeholder electors before the instruments may be legally issued. Hygema v. City of Sebring, and Kathleen Citrus Land Co. v. City of Lakeland, decided at this term. Charles v. City of Miami, filed this day.

When power is granted by law to counties, districts or municipalities, the exercise of the power must be in accord with the grant; and any doubt as to the grant or to the extent of a power so granted, should be resolved against the county, district or municipality asserting the power. See Jacksonville Electric Light Co. v. City of Jacksonville, 36 Fla. 229, 18 So. 677, 51 Am. St. Rep. 24, 30 L. R. A. 540.

The Constitution does not expressly forbid the issue of bonds by counties, districts or municipalities for appropriate county, district or municipal purposes; but (except as to refunding bonds) the Constitution does now forbid

the issue of county, district or municipal "bonds" unless "the same shall have been approved" under amended Section 6, Article IX, Constitution, by the prescribed vote of freeholder electors. Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558; Herbert v. Thursby, 112 Fla. 826, 151 So. 385. Instruments evidencing a county, district, or municipal debt may not be bonds within the meaning of amended Section 6, Article IX of the Constitution. Ginsberg v. City of Daytona Beach, 103 Fla. 168, 137 So. 253; Savage v. Bd. Pub. Inst., 101 Fla. 1362, 133 So. 341; Tapers v. Pichard, 124 Fla. 549, 169 So. 39.

When a statute for an appropriate and legal purpose, but without providing for the approval of the required vote of the electors, grants power to issue any instruments evidencing an indebtedness to be paid in the future by a county, district or municipality, and a reasonable doubt arises as to whether in legal effect such instruments are not county, district or municipal "bonds" within the meaning of Section 6, Article IX, of the Constitution, as amended in 1930, the doubt as to the exercise of the delegated power should be resolved against the issue of the instruments by such subordinate governmental unit until the issue of the instruments is duly approved by the required freeholder electors under amended Section 6, Article IX, Constitution.

Under Section 8, Article XIII of the State Constitution, the Legislature has power to make exceptions to the ordinary debt limitations usually found in city charters or other statutes, by conferring the power to issue obligations under special circumstances deemed by the Legislature proper to constitute an exception to the general limitations imposed by statutory enactments. See also Sec. 24, Art. III, Constitution. See Charles v. City of Miami, decided at this term.

In the Sebring case the project was the construction of a new utility. In the Lakeland case the citizens and tax-payers were required to pay a charge for connecting with the sewer system they had enjoyed free in consideration of the taxes paid by them for the bonded debt incurred in constructing the original sewer system. There were other considerations requiring the new debt to be approved by the freeholder electors. The case of Board of County Commissioners of Pinellas County v. Herrick was controlled by the particular special statute and its operation.

In Charles v. City of Miami, the project is in effect a new construction of a *merely desirable* or *convenient* facility, and *not* the preservation or improvement of an *existing utility that is* immediately necessary to conserve the health, safety or economic security of the community. In such case the amended organic Section 6, Article IX, does not contemplate that the required vote of the freeholder electors may be waived, since the project is either a new construction or is not an *existing essential utility* to be improved as required to meet an *immediate and imperative public need* to secure the health or to serve the economic necessity of the community.

In this case an *existing necessary public utility* is to be *improved* and *extended* to meet the *imperative* needs to conserve the health and economic security of the Town, and the decision is controlled by the adjudication in State v. City of Miami, 113 Fla. 280, 152 So. 6, and other like cases.

Affirmed.

TERRELL, BUFORD, and DAVIS, J. J., concur.

ELLIS, P. J., concurs upon the principle announced in his specially concurring opinion in the case of State, *ex rel.* City of Vero Beach, v. MacConnell, this day filed.

BROWN, J., concurs in the conclusion.