JACK TRUDNAK v. CITY OF FORT PIERCE, Fred Holtsberg, as Mayor, H. M. Horton, as City Clerk, Fred Holtsberg, Walter Peterson, J. W. Sneed, R. L. Goodwin and C. D. Mustaine, as City Commissioners.

185 So. 353.
Division A.
Opinion Filed December 16, 1938.

574

*J. M. Sample, Jr.,* for Appellant;

*G. R. Nottingham,* for Appellees.

BUFORD, J.—The appeal brings for review order dismissing taxpayer's bill for injunction seeking to enjoin the

issuance by defendants, appellees here, of certain negotiable "Electric and Water System Revenue Certificates."

The ordinance under which certificates are to be issued provides *inter alia*:

"(g) It is necessary and desirable to construct, and there is hereby authorized to be constructed, additions and improvements to that portion of the electric light and water system known as the water supply and distribution system, such additions to the water supply and distribution system (herein called the 'Project') to include facilities for conserving the existing water supply and for obtaining a new water supply and delivering it to the City and also to include the construction of water pipe lines and other extensions and improvements to the present water distribution system. The estimated cost of constructing the Project is $223,635.

"Section 2. For the purpose of financing the cost of constructing the Project, in excess of the grant to be made to the City by the United States of America, there shall be issued negotiable Electric and Water System Revenue Certificates, Third Series, of the City (herein called the 'Certificates, Third Series') in the aggregate principal amount of $135,000, which Certificates, Third Series, shall be dated October 1, 1938, in the denomination of $1,000 each, numbered from 1 to 135, both inclusive, in order of maturity, shall bear interest at the rate of four per cent (4%) per annum, payable semi-annually on April 1st and October 1st in each year, first interest being payable April 1, 1939, shall be payable as to both principal and interest at the office of the City Treasurer in the City of Fort Pierce, Florida, or at the option of the holder at the Manufacturers' Trust Company in the Borough of Manhattan, City and State of New York, in any coin or currency which, on the

respective dates of payment of the same; is legal tender for the payment of public and private debts, shall be registerable as to principal only at the option of the holder and shall mature on October 1st in years and amounts as follows:

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1943 | $2,000 | 1957 | $6,000 |
| 1944 | 2,000 | 1958 | 6,000 |
| 1945 | 2,000 | 1959 | 6,000 |
| 1946 | 2,000 | 1960 | 6,000 |
| 1947 | 4,000 | 1961 | 6,000 |
| 1948 | 4,000 | 1962 | 6,000 |
| 1949 | 4,000 | 1963 | 6,000 |
| 1950 | 4,000 | 1964 | 6,000 |
| 1951 | 4,000 | 1965 | 6,000 |
| 1952 | 4,000 | 1966 | 6,000 |
| 1953 | 4,000 | 1967 | 6,000 |
| 1954 | 5,000 | 1968 | 6,000 |
| 1955 | 5,000 | 1969 | 6,000 |
| 1956 | 5,000 | 1970 | 6,000 |

'Said Certificates, Third Series shall be signed by the Mayor of the City and sealed with the corporate seal of said City and attested and countersigned by the City Clerk; and the interest coupons attached to said Certificates shall be executed with the facsimile signatures of said Mayor and said City Clerk.

"Section 3. The Certificates, Third Series, and coupons attached thereto shall be in substantially the following form, to-wit:"

Then follows a copy of a proposed certificate.

The Ordinance thereafter provides:

"Section 7. The Certificates, Third Series, herein authorized shall rank *pari passu* as to security with the

Certificates hereinbefore mentioned and authorized under Ordinance B-55, and shall have full benefit of all provisions of Section 7 of said Ordinance B-55 and of the Utility Bonds Sinking Fund provided by said Section 7.

"Section 8. The City hereby covenants and agrees with the holders of such Certificates, Third Series, that while any of said Certificates, Third Series, or coupons issued hereunder are outstanding and unpaid,

"(a) The City will maintain the electric light and water plant in good condition, and operate the same in an efficient manner and at a reasonable cost,

"(b) The City shall fix and maintain rates and collect charges for the facilities and services afforded by the electric light and water system which will provide revenue sufficient at all times to pay the cost of operation and maintenance of said electric light and water system and to maintain the Utility Bonds Sinking Fund referred to in Section 7 of Ordinance B-55. The City will make reasonable payment into the Revenue Account referred to in Section 7 of Ordinance B-55 for the facilities and services afforded to the City and all departments thereof by the electric light and water system.

"(c) The City will not issue any additional obligations payable from the revenues of said electric light and water system, creating or purporting to create a lien on the revenues of said electric light and water system prior or superior to the lien of the Certificates issued hereunder, and will not sell, mortgage, lease or otherwise dispose of or encumber any property essential to the proper operation of said electric light and water system.

"(d) The City will maintain insurance on the electric light and water system of the kind and in an amount which usually would be maintained by private corporations owning and operating a similar undertaking.

"(e)   The City will keep proper books of record and account separate from all other records and accounts, in which complete and correct entries shall be made in accordance with standard principles of accounting, of all transactions relating to the electric light and water system. The City shall furnish to any holder of any of the certificates, Third Series, at the time outstanding, at the written request of such holder, not more than thirty days after the close of each six month fiscal period complete operating and income statements of the electric light and water system in reasonable detail covering such six months' period, and not more than sixty days after the close of each fiscal year complete financial statements of the electric light and water system in reasonable detail covering such fiscal year and certified by independent auditors if so requested.

"(f)   Any holder of any Certificates, Third Series, issued hereunder shall have the right at all reasonable times to inspect the electric light and water system and all records and accounts thereof.   None of the foregoing covenants shall be construed as requiring the City to expend any funds other than the revenues derived from the operation of said electric light and water system.

"Section 9.   No taxes shall ever be levied and no monies shall ever be taken or diverted from any funds of the City for the payment of the principal of or interest on the Certificates, Third Series, issued hereunder, except as hereinbefore expressly provided."

The proposed certificates contain the following provisions:

"This Certificate is one of an authorized issue limited to an aggregate principal amount of $135,000, all of like tenor and effect except as to number and maturity, issued by said City under authority of and in full compliance with the

Constitution and statutes of the State of Florida, particularly the Charter of said City, and by virtue of an Ordinance entitled 'An Ordinance providing for the construction of additions and improvements to the electric light and water system of the City of Fort Pierce, Florida, and for the issuance of $135,000 revenue certificates of the City of Fort Pierce payable solely from the revenues derived from the electric light and water system of said City to finance the cost of said construction' finally adopted by the City Commission of said City on the 19th day of November, 1938, and said Ordinance is hereby referred to and, as to all of its terms and conditions, is made a part of this Certificate. Said Ordinance provides that the City shall fix and maintain rates and collect charges for the facilities and services afforded by the electric light and water system of said City which will provide revenues sufficient at all times to pay the cost of operation and maintenance of said electric light and water system and pay into the bond fund designated as the 'Utility Bonds Sinking Fund' a sufficient amount of revenue over and above such cost of operation and maintenance to pay the interest on and the principal of said Certificates and all other bonds, certificates and obligations which are payable from and are a charge on the revenues of said electric light and water system, as the same respectively become due.

"This Certificate, equally and ratably with all other certificates of the issue of which this Certificate is one, is payable together with all obligations heretofore issued and now outstanding for the construction, acquisition, extension or improvement of the municipal electric light and water system, and together with all obligations which may hereafter be issued for such purposes as to both principal and interest from and secured together with all obligations heretofore issued and outstanding for the construction, acquisition,

extension or improvement of said system and together with all obligations which may hereafter be issued for such purposes by a lien upon the gross revenues of said system after deduction only of the cost of operation and maintenance thereof."

The first question urged for our consideration is:

"Has the City of Fort Pierce authority to issue revenue certificates payable solely out of the net revenues of the electric light and water system without approval of the freeholders of the City of Fort Pierce, as required by amended Section 6, Article IX of the Constitution of Florida?"

Sections 75 and 76 of 12746, Acts of 1927, being the charter Act of the City of Fort Pierce, provide as follows:

"Sec. 75. *Light, Heat and Power.*—That the City Commission shall have power to provide for lighting the streets, parks and public buildings of the City; and to establish, maintain and operate plants, either within or without the corporate limits of the city for lighting and heating by electricity, gas, or any other method; and to supply the inhabitants of said city with artificial light, heat, and power for domestic, business and other purposes, and to charge and collect reasonable rates, prices and compensation for furnishing and supplying the same.

"Sec. 76. *Water Works.*—The City Commission shall have power to construct, establish, and maintain water works, and to bore and dig wells, construct reservoirs, lay pipes, and do such other things as may be necessary, essential, or convenient either within or without the corporate limits of said City, for procuring and distributing an abundant supply of good wholesome water to the inhabitants of said City for domestic, commercial, industrial, and fire protective purposes; and to make reasonable rates, prices and compensation for furnishing and supplying the same, including charges for private fire hydrants, stand pipes, and

sprinkler systems rentals, and charges against the operation of the City for public fire hydrant rental and service, payment for which shall be provided in the annual budget."

It is well settled that under such charter provisions municipalities may issue revenue certificates, payable solely from revenues of the involved utilities, to produce necessary funds to make necessary improvements and betterments of municipally owned utility plants. State, *ex rel.*, v. City of Miami, 113 Fla. 280, 152 South. Rep. 6; State, *ex rel.*, v. City of Lake City, 116 Fla. 10, 156 South. Rep. 924; City of Vero Beach v. MacConnell, 125 Fla. 130, 169 South Rep. 628; Williams v. Town of Dunnellon, 125 Fla. 114, 169 South. Rep. 631, and see cases cited in these opinions.

The second question posed is:

"Are the proposed revenue certificates described in the Bill of Complaint, Bonds, obligations and indebtedness coming within the purview, intent and operation of Section 6, Article IX, of the Constitution, as amended, and therefore void?"

The opinions and precedents *supra* answer this question in the negative.

"Has the City of Fort Pierce the authority to construct, own, operate and maintain extensions to its electric light and water system and to finance the cost of same by the issuance of revenue certificates of the said City payable solely out of the net revenues of the said electric light and water system?"

The opinions and precedents *supra* answer this question in the affirmative.

The fourth question presented is:

"Has the City of Fort Pierce the right and authority to pledge its power to make its electric light rates in excess of

its present rate structure to secure the payment of revenue certificates sought to be issued?"

Our opinion and judgment in the cases of State, *ex rel.* Vero Beach, v. MacConnell, *supra,* Boykin v. Town of River Junction, 124 Fla. 827, 169 South. Rep. 492, and other cases above cited, recognize the existence of the challenged authority in the municipality. The record here does not indicate any intention to exceed the authority in this regard which was recognized and approved in the case of City of Vero Beach v. MacConnell, *supra.*

The fifth, and last, question submitted is:

"Does the proposed revenue certificates sought to be issued violate the Charter of the City of Fort Pierce, known as Chapter 12746, Laws of Florida, Acts of 1927, and more particularly Section 17 thereof, limiting the amount of bonds which may be issued by the City of Fort Pierce?"

That the proposed revenue certificates are not within the purview of the debt limitation provision of the charter act may be said to be established by the opinion and judgment of this Court in the cases of Boykin v. Town of River Junction, *supra*; State, *ex rel.,* v. City of Miami, *supra*; City of Vero Beach v. MacConnell, *supra*; Williams v. Town of Dunnellon, *supra,* and in Jack Trudnak v. Gustafson filed at this term of the Court, not yet reported.

The conclusion, on consideration of the entire record, is that the order appealed from is without error and should be affirmed.

So ordered.

Affirmed.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.