PER CURIAM.
We review the final judgment of the Circuit Court of Orange County refusing to validate the refunding of utility revenue bonds in the sum of $950,000,000 by the Orlando Utilities Commission. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
The Orlando Utilities Commission (OUC) was created by chapter 9861, Laws of Florida (1923), as a part of the government of the City of Orlando (City) to manage and control the electric light and water works of the City. Section 1 of chapter 61-2589, Laws of Florida, amended chapter 9861 by authorizing OUC to acquire, establish, construct, maintain and/or operate electric generating plants, electric lines and facilities incident thereto. Section 2 of this act provides “The Orlando Utilities Commission and the City of Orlando be and they are hereby authorized to do all things necessary or required to carry into effect the provisions of this act.”
Section 2 of chapter 82-415, Laws of Florida, amended section 7 of chapter 9861, as previously amended, to read in pertinent part:
Section 7. (1) In addition to the power and authority to borrow money otherwise provided by any other provision of this Act or of general law, the Orlando Utilities Commission shall also have power to borrow money and incur indebtedness from time to time with a maturity date of not more than 3 years for the purposes of paying current operating expenses of the Utilities Commission and expenses in connection with the acquisition, operation, maintenance, repair, extension, or improvement of any project relating to electric and water facilities which indebtedness shall be evidenced by notes of the Utilities Commission issued in the manner and subject only to the limitations hereinafter set forth in this section.

(3) In order to exercise the power to borrow money pursuant to this section, the Utilities Commission shall adopt a resolution authorizing the sale and issuance of notes for such purpose, which resolution shall specify:
(a) The purpose or purposes for which the proposed notes are to be issued;
(b) The maximum principal amount of the notes which may be outstanding at any one time;
(c) The maximum interest rate or interest rate formula, to be determined in the manner specified in the resolution, to *343 be incurred through the issuance of such notes; and
(d) The obligations to holders of notes while such notes are outstanding.
(4) The Utilities Commission may also provide in the resolution, at its discretion, but subject to the limitations contained in this section:

(d) For the refunding of the notes, from time to time, without further action by the Utilities Commission, unless and until the Utilities Commission specifically revokes such authority to refund, provided that in no event shall any refunding note be issued with a maturity date later than 3 years from the date of issuance of the original note; and

(7) This section is complete authority for the issuance of notes as herein provided and the obtaining of credit hereunder, and no action or proceeding not required by this section shall be necessary for the valid authorization of such indebtedness. The powers conferred by this section are in addition and supplemental to, and are not in substitution for, and the limitations imposed by this section shall not affect, the powers conferred by any other section of this Act or by law.
The OUC adopted a resolution on March 25, 1985, approving the refunding of previously issued long-term revenue bonds in the sum of $950,000,000 and forwarded it to the City for consideration on its consent agenda. The City consented by resolution, on April 1, 1985, to the issuance of the bonds. The OUC then filed a complaint pursuant to chapter 75, Florida Statutes, seeking validation of the bonds. The complaint did not refer to the City’s approval of the bonds and sought validation under the authority of OUC to acquire, establish, construct, maintain and/or operate the water and electric systems and to do all things necessary or required to carry into effect the provisions of this authority. The state attorney answered, averring, among other things, that the complaint was insufficient in not alleging express authority for OUC to issue the long-term bonds and it failed to show that refunding the bonds was necessary or required. No mention was made of the City’s approval of the refunding, although the parties’ stipulation as to evidence included a certificate of the City that it approved of the refunding resolution. P.O.W.E.R. NOW, Inc. also answered the complaint, averring, among other things, that OUC had no authority to pass such a resolution. The cause then went to trial with OUC maintaining that it had independent authority under chapter 61-2589 to do all things necessary or required, including the issuance of long-term revenue bonds, to acquire, establish, construct, maintain and/or operate electric facilities. The trial court disagreed, finding that OUC did not have explicit authority to issue such bonds and that the implied authority relied upon was insufficient.
It is clear from the above that the issue presented to the trial court on which judgment was rendered was whether OUC could issue long-term revenue bonds on its own authority, without the approval of the City. Indeed, it is the position of appellant that it could issue such bonds even if the City disapproved. Appellant argues that it has been issuing long-term bonds for almost fifty years and that its authority to do so is well established. In support, appellant cites a series of cases upholding the authority of public utilities to issue such bonds. City of New Smyrna Beach v. State, 132 So.2d 145 (Fla.1960); State v. City of Key West, 153 Fla. 226, 14 So.2d 707 (1943); Trudnak v. City of Ft. Pierce, 135 Fla. 573, 185 So. 353 (1938); State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300 (1934). Appellees answer that these cases involve the authority of municipalities to issue utility revenue bonds and that they do not contest the authority of the City of Orlando to issue such bonds. Appellant also cites City of Orlando v. Evans, 132 Fla. 609, 182 So.264 (1938), as upholding the authority of OUC to incur long-term debt even in the face of City opposition. Appellees counter that Evans was not a bond validation decision; that the *344 issue there concerned the authority of OUC to buy a generator under a contract where the seller retained title and that this method of financing was used precisely because OUC did not have authority to issue bonds beyond six months.
Appellant also offers a variation of the above arguments, the thrust of which is that courts should not review questions of business policy or judgment of governmental units when the unit decides to issue bonds. It is appellant’s position that it offered uncontradicted evidence that refunding the present bonds would result in savings to OUC because of lower interest rates and, thus, the refunding is necessary or required. Town of Medley v. State, 162 So.2d 257 (Fla.1964). This rule is not affected by the fact that bonds are issued for refunding purposes. State v. Florida State Turnpike Authority, 134 So.2d 12 (Fla.1961). Appellees aver that while the business judgment rule is applicable when the issuing unit has explicit authority to issue bonds, it is not so when the issuing unit relies on the implied authority of “necessary or required.” In appellees’ view, under these circumstances, OUC is obligated to prove that the refunding is necessary or required to the satisfaction of the court. Appellees conclude that OUC failed to so prove and that the trial court should be affirmed.
Briefs submitted and oral argument before this Court convince us that OUC has the implied authority when the need is apparent to issue refunding bonds under the necessary or required clause. To hold otherwise would seriously hamper OUC’s ability to perform its legislative mandate of controlling and managing the electric light and water works of the City. This reduces the issue to one of whether the record supports the trial court’s finding that the issuance is not necessary or required. We disagree with the trial court on this critical issue. Appellant placed in evidence expert testimony that the refunding would result in lower interest rates and a net saving to OUC. There was no contradictory evidence from appellees and we are not inclined to reevaluate or reject this expert testimony and the judgment of OUC that refunding the bonds is necessary or required. We are persuaded that OUC does have authority to issue long-term bonds under its authority to do all things necessary or required to provide electric service. We conclude that the bonds should be validated.
The judgment of the trial court is reversed and the case remanded for proceedings consistent with this decision.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDonald and EHRLICH, JJ., concur.
SHAW, J., concurs in result only with an opinion.