866 So.2d 184 (2004)
Delia RODRIGUEZ and Frank Rodriguez, Appellants,
v.
Carlos B. SAENZ, M.D., and Florida Heart Group, Appellees.
No. 5D03-1902.
District Court of Appeal of Florida, Fifth District.
February 20, 2004.
Gregorio A. Francis of Morgan, Colling & Gilbert, P.A., Orlando, for Appellants.
Martin B. Unger and Ernest J. Myers of Unger, Acree, Weinstein, Marcus, Merrill, Kast & Metz, P.L., Orlando, for Appellees.
MONACO, J.
This appeal from a final summary judgment in favor of the defendants below causes us to examine an issue regarding the commencement of the statute of limitations period for medical malpractice actions brought pursuant to Chapter 766, Florida Statutes. Because we conclude that the date of the commencement of the statute of limitations is, under the facts of this case, an issue of fact that should be left to the consideration of a jury, we reverse.
One of the appellees, Dr. Saenz, began treating appellant Delia Rodriguez, a 62-year old woman with two years of high school education, in February of 1999, because an electrocardiogram ("EKG") that she was given showed certain abnormalities. *185 Mrs. Rodriguez had a family history of heart disease, and had smoked cigarettes for 48 years. Dr. Saenz is a physician specializing in cardiology in a professional association named the Florida Heart Group ("FHG"), the other appellee in this case. Mrs. Rodriguez had been referred to FHG for a cardiac evaluation because of the abnormal EKG, and Dr. Saenz was assigned to perform the evaluation. The EKG that was the basis for the referral indicated to Dr. Saenz that Mrs. Rodriguez had suffered a heart attack at some earlier time.
During her initial visit, Dr. Saenz ordered another EKG and a stress test. As both tests were abnormal, and confirmed that Mrs. Rodriguez had, in fact, experienced a myocardial infarction, Dr. Saenz prescribed medication, but did not prescribe for her, or discuss with her, a heart catheterization. His notes indicate, however, that she was symptomatically improved while taking the prescribed medications.
On April 2, 1999, Mrs. Rodriguez was admitted to Florida Hospital, having endured a second heart attack, and cardiac bypass surgery was performed on her the next day. Mrs. Rodriguez continued her course of treatment with Dr. Saenz for some time subsequent to her second heart attack, but ceased doing so on November 8, 1999. She testified on deposition that she continued to have confidence in Dr. Saenz after her second heart attack, but that her confidence in him ceased in October or November of 1999.
At about that time Mrs. Rodriguez had a conversation with two of her relatives regarding the care afforded her by Dr. Saenz. During this conversation, her daughter and sister (who also had a history of cardiac disease), suggested to Mrs. Rodriguez that based on her previous test results, Dr. Saenz should have performed a cardiac catheterization, and that her second heart attack would have been prevented had he done so. Mrs. Rodriguez testified in her deposition that this conversation was the first time she suspected Dr. Saenz of being negligent. She additionally testified that it was her belief that Dr. Saenz was not interested in her case because she was unable to afford insurance, and that his course of treatment was geared around her lack of insurance. She said that she understood her condition to be serious because of her previous heart attack, and that prior to her second heart attack her condition was deteriorating, and the tightness in her chest was worsening.
Mrs. Rodriguez filed a petition to extend the statute of limitations pursuant to section 766.104(2), Florida Statutes (2001), on January 17, 2001. The appellees, Dr. Saenz and FHG, were served with a Notice of Intent by Mrs. Rodriguez and her husband on October 1, 2001. Three weeks later Dr. Saenz and FHG responded to the Notice of Intent claiming they would investigate the claim, but felt that the statute of limitations had expired. They requested an extension of the ninety-day presuit investigation period, but ultimately denied the claim on February 1, 2002. Mr. and Mrs. Rodriguez filed their complaint seeking damages for medical malpractice on March 12, 2002.
After the complaint was amended Dr. Saenz and FHG answered and raised the statute of limitations as an affirmative defense. The depositions of Mrs. Rodriguez and Dr. Saenz were thereafter taken, and Dr. Saenz and FHG then moved for summary judgment, asserting that there was no genuine issue of material fact that the statute of limitations had run, and that they were, therefore, entitled to a judgment as a matter of law. Neither party filed affidavits in support of or against summary judgment. Rather, both sides *186 relied on the deposition transcripts of Ms. Rodriguez and Dr. Saenz to support their respective positions with respect to the motion.
Dr. Saenz and FHG argued at the motion hearing that Mrs. Rodriguez had to have known of the possibility of medical negligence either when she had her second heart attack, or when she had her next office visit with Dr. Saenz. Mr. and Mrs. Rodriguez argued that the actual date Mrs. Rodriguez was deemed to have knowledge of the possibility of medical malpractice was a question of fact for a jury to decide, and that summary judgment was not appropriate.
The trial court granted the motion of Dr. Saenz and FHG for summary judgment. In its order the trial court analyzed the arguments of the parties, compared it to the case law, and concluded that the defense of statute of limitations was well taken. The order stated:
In sum, there is no genuine factual dispute about when the statute of limitations began to run. It started on April 2, 1999, and ran out on July 1, 2001.[1] There is no reason attributable to the nature of the injury, treatment, or available information that would excuse the filing of the notice of intent to sue more than two months after the limitations period expired. Since there are no material facts in dispute and Plaintiffs' position is legally unsupportable, Defendants are entitled to summary judgment.
Mr. and Mrs. Rodriguez timely appealed.
The path of the law around summary judgment is well beaten, and needs little explication. A party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact, and that the movant is entitled to a judgment as a matter of law. See Fla. R. Civ. P. 1.510(c); Holl v. Talcott, 191 So.2d 40 (Fla.1966). In addition, the movant must overcome any reasonable inferences, doubts and conclusions, all of which are to be liberally construed in favor of the party opposing summary judgment. See Johnson v. Studstill, 71 So.2d 251 (Fla.1954); Smith v. Harr, 571 So.2d 575 (Fla. 5th DCA 1990). In short, unless the facts are so crystallized that only questions of law remain, summary judgment is inappropriate. See Bess v. 17545 Collins Ave., Inc., 98 So.2d 490 (Fla.1957); Smith. That is not the case here.
We begin with the law governing the statute of limitations in medical negligence cases. Section 95.11(4)(b), Florida Statutes (2001), reads in pertinent part as follows:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence ... An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnoses, treatment, or care by any provider of health care.
This statute was initially explored by the Florida Supreme Court in Nardone v. *187 Reynolds, 333 So.2d 25 (Fla.1976). The court there held that the statute of limitations begins to run when the plaintiff knew or should have known that either the injury or the negligence had occurred. See also Barron v. Shapiro, 565 So.2d 1319 (Fla.1990). Later in Tanner v. Hartog, 618 So.2d 177 (Fla.1993), however, the high court decided to ameliorate the "harsh results" of this position by holding that "knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice." Tanner, 618 So.2d at 181. The court then explained further that the nature of the injury alone may in some cases be such that it communicates the possibility of medical negligence, in which case the limitations period would begin to run immediately upon discovery of the injury. In other cases, however, "if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred." Id. at 182. Finally, the court then recognized that its holding would make it more difficult to decide as a matter of law when the limitations period begins to run, "and may often require a fact-finder to make that determination." Id. See also Cunningham v. Lowery, 724 So.2d 176 (Fla. 5th DCA 1999). We think that is the situation in the present case.
Mrs. Rodriguez had a personal and familial history of heart disease, was a long-term tobacco user, and was not medically sophisticated. A second heart attack may for her have been a natural occurrence. That is to say, the fact that she endured a second myocardial infarction while under medical treatment would not necessarily, and as a matter of law, have placed her on notice that the second episode was the result of medical negligence. Thus, this is not a case where, for example, the wrong limb was amputated, and negligence would be obvious even to a person lacking medical sophistication. Rather the issue is far more subtle. Moreover, after considering the comments and explanations given by Mrs. Rodriguez in her deposition, which were relied upon by Dr. Saenz and FHG, on the subject of when she first considered the possibility that Dr. Saenz might have committed malpractice, it appears to this court that the issue of the commencement of the statute of limitations should not in this case have been concluded by summary judgment. Heeding the warning that "courts should take care not to impute sophisticated medical analysis to a lay person struggling with the fact of a crippling or horrifying illness,"[2] we conclude that the date that Ms. Rodriguez should have known that there was a reasonable possibility that her second myocardial infarction was caused by medical malpractice is an issue that should be placed before a jury for resolution. The trial court erred in granting the summary judgment.[3]
REVERSED and REMANDED for proceedings not inconsistent with this opinion.
GRIFFIN and TORPY, JJ., concur.
NOTES
[1] Since the limitations period purportedly ran out before the notice of intent to sue was served in this case, the extensions contemplated in section 766.106(4) would, if the appellees were correct, never have been triggered and would be irrelevant to the disposition of this case. See § 766.106(4), Fla. Stat. (2001) (providing 90-day tolling of statute of limitations for negotiation after service of notice of intent; an additional 60 days after receiving notice of termination of negotiations or the "remainder of the period of the statute of limitations, whichever is greater," in which to file Complaint).
[2] Cunningham 724 So.2d at 179.
[3] Although another issue was raised in this appeal concerning whether Dr. Saenz and FHG waived the statute of limitations by asking for and receiving an extension of the presuit period, we do not reach that issue in view of our conclusion that summary judgment was inappropriate.