981 So.2d 521 (2008)
Deborah LEDERER, Appellant,
v.
ORLANDO UTILITIES COMMISSION, Appellee.
No. 5D07-1933.
District Court of Appeal of Florida, Fifth District.
April 18, 2008.
Rehearing Denied May 15, 2008.
*522 Amy M. Romaine, of A.M. Romaine, P.A., Viera, and Sylvia A. Grunor, of Weiss, Grunor & Weiss, P.A., Maitland, for Appellant.
Dennis R. O'Connor and Warren B. Kwavnick, of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for Appellee.
ORFINGER, J.
Deborah Lederer appeals a final summary judgment entered in favor of the Orlando Utilities Commission ("the OUC") in a negligence action that Ms. Lederer filed against the OUC after she fell on a damaged water meter cover. After the accident, Ms. Lederer notified the OUC of her injuries and communicated with the OUC's risk management director. However, she did not notify the Florida Department of Financial Services ("the Department") of the claim until more than four years after the accident. Her failure to do so was the basis for the trial court's summary judgment against her. We affirm.
Ms. Lederer brought a negligence action against the OUC, alleging that an OUC employee failed to properly replace the lid over the water meter in her yard, causing her to fall and injure herself. She pled that all "conditions precedent and notice requirements [had] been complied with or otherwise waived." In response to the complaint, the OUC filed a motion to dismiss, arguing that Ms. Lederer had failed to provide the requisite presuit notice under section 768.28(6), Florida Statutes (2001), to the Department. The motion to dismiss was denied. The OUC then answered the complaint and moved for summary judgment, arguing that Ms. Lederer had failed to comply with the presuit requirements of section 768.28(6). The OUC asserted that since it is not a "municipality" within the meaning of section 768.28(6), Ms. Lederer was required to notify the Department of her claim within the three-year statutory period. The trial court granted the OUC's motion, concluding that while Ms. Lederer had properly notified the OUC of her claim, she had failed to comply with section 768.28(6), by not providing timely presuit written notice of her claim to the Department. The court determined that the OUC is not a "municipality" so as to exempt Ms. Lederer's claim from that notification requirement. The court subsequently entered a final summary judgment in favor of the OUC, and this appeal followed.
The standard of review of an order granting summary judgment is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rodriguez v. Saenz, 866 So.2d 184, 186 (Fla. 5th DCA 2004) (citing Fla. R. Civ. P. 1.510(c); Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966)). "If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
Section 768.28(6), Florida Statutes, is part of a statutory waiver of sovereign immunity. As a result, strict compliance is required. See Levine v. Dade County Sch. Bd., 442 So.2d 210, 212 (Fla.1983). The statute requires that before a tort claim may be filed against a county or other state agency, the claimant must give written notice of the claim to the agency and to the Department within three years after the claim accrues. However, presuit notice *523 to the Department is not required if the claim is brought against a municipality.[1]
In McSwain v. Dussia, 499 So.2d 868 (Fla. 1st DCA 1986), the court rejected the plaintiff's argument that notice to the Department of Insurance (now the Department of Financial Services) was not required for a claim against an agency of a county or municipality. Specifically, the court explained:
[W]e conclude that whether the hospital authority is an agency of the city of Jacksonville, rather than an agency of Duval County, makes no difference. The record shows that the Authority is not a municipality, as distinguished from an agency of a municipality; and only if the claim is against a "municipality" itself is notice on the Department of Insurance excused. Although it might appear reasonable, in deciding this issue, to inquire whether the Department of Insurance has any interest or will play any part in assisting the municipal agency to dispose of the claim, the supreme court has held that such questions are not relevant to the notice requirement and that the statute must be given literal effect.
Id. at 870 (internal citation omitted). McSwain holds that only when a claim is against a municipality itself, as opposed to a municipal agency, is notice to the Department excused. Ms. Lederer tries to distinguish McSwain by arguing that the OUC is an integral component of the City of Orlando ("the City"), much like its police or fire department. Hence, the dispositive issue is whether the OUC is a municipal or quasi-municipal agency, in which case notice to the Department was required, or simply a component part of the City, such as its police or fire department, wherein notice was not required.
The OUC was created in 1923 by a special act passed by the Legislature, chapter 9861, Laws of Florida (1923), and took effect after the affirmative vote of a majority of the freeholders of the City. See ch. 9861, § 13, Laws of Fla. (1923); Gaines v. City of Orlando, 450 So.2d 1174, 1181 (Fla. 5th DCA 1984); see also Orlando Utils. Comm'n v. State, 478 So.2d 341, 342 (Fla.1985); City of Orlando v. Evans, 132 Fla. 609, 182 So. 264, 265 (1938); Northcutt v. Orlando Utils. Comm'n, 614 So.2d 612, 615 (Fla. 5th DCA 1993), approved sub nom, Ford v. Orlando Utils. Comm'n, 629 So.2d 845 (Fla.1994). The special act established the OUC as a "part of the government of the City of Orlando," but *524 provided that the OUC would have substantial autonomy to operate independent of the City government. Gaines, 450 So.2d at 1180.
For instance, the City Council selects the OUC's board members. See ch. 9861, § 4, Laws of Fla. (1923); ch. 31092, § 1, Laws of Fla. (1955); ch. 86-421, §§ 2, 3, Laws of Fla. While the OUC has its own president and its own board separate from the Orlando City Council, the Mayor of the City sits on the OUC's board. See ch. 86-421, §§ 2, 3, Laws of Fla. Further, the OUC is required to submit monthly accounting statements along with detailed annual reports to the City Council. See ch. 9861, § 8, Laws of Fla. (1923); ch. 10968, § 3, Laws of Fla. (1925). In addition, only the City is authorized to exercise the right of eminent domain to appropriate property for its water supply. See ch. 13198, § 1, Laws of Fla. (1927). Still, both the City and the OUC are "authorized to do all things necessary or required to carry into effect the provisions of this act." See ch. 61-2589, § 1, Laws of Fla.; ch. 97-334, § 1, Laws of Fla.
At the same time, the OUC acts independently and beyond the control of the City with respect to the powers it has under the special act. The OUC has the authority to furnish electric power, energy services, and water to users in any part of Orange County. See ch. 9861, § 9, Laws of Fla. (1923). It also has "full authority" over "the management and control of the electric light and water works plant of the City of Orlando," see ch. 31092, § 1, Laws of Fla. (1955); see also ch. 9861, § 6, Laws of Fla. (1923); and to "prescribe rates, rules and regulations governing the sale and use of electricity, power and water wherever furnished by said Commission and to change the same at its pleasure," see ch. 31077, § 1, Laws of Fla. (1955); see also ch. 9861, § 11, Laws of Fla. (1923). Subsequent special acts have expanded this authority, giving the OUC, for example, the authority to "acquire, establish, construct, maintain and/or operate" electric generating plants within Brevard County and parts of Osceola County. See ch. 9861, § 9, Laws of Fla. (1923); ch. 61-2589, § 1, Laws of Fla.; ch. 97-334, § 1, Laws of Fla. The OUC has also been given authority to borrow money, incur debt, and issue notes, see ch. 82-343, § 1, Laws of Fla.; ch. 82-415, § 2, Laws of Fla.; issue revenue bonds and make agreements with the City and "holders of any revenue bonds or other obligations issued to finance," see ch. 24758, § 3, Laws of Fla. (1947); ch. 86-421, § 2, Laws of Fla.; bill for sewer service, see ch. 24758, § 1, Laws of Fla. (1947); and discontinue service (with the City's consent) due to nonpayment, see ch. 24758, § 2, Laws of Fla. (1947).
As this Court recognized in Gaines, the interconnected relationship between the City and the OUC is both unique and strange. 450 So.2d at 1181. While the OUC is a part of the City for some purposes, it is independent and beyond the control of the City as to the powers granted to it under the special act. See Gaines, 450 So.2d at 1181; see also ch. 9861, § 1, Laws of Fla. (1923); State, 478 So.2d 341; Evans, 182 So. at 265. "The City and its electors have no control over the OUC; but neither does the OUC have control over the City." Gaines, 450 So.2d at 1182.
In City of Tampa v. Easton, 145 Fla. 188, 198 So. 753, 754 (1940), the Florida Supreme Court explained that a municipality "is a legal entity consisting of population and defined area, with such governmental functions and also corporate public improvement authority as may be conferred by law in a charter or other legislative enactment under the [Florida] *525 Constitution."[2] The elements essential to the existence of "municipality" are a community of people, and a territory occupied by them. State v. Town of Lake Placid, 109 Fla. 419, 147 So. 468, 471 (1933); see City of Winter Haven v. A.M. Klemm & Son, 132 Fla. 334, 181 So. 153 (1938) (explaining that to "establish" municipality, community of people and territory must exist, occupying sufficient area to require organized agency for management of local affairs of quasi-public nature); Black's Law Dictionary 1018 (6th ed. 1990) (defining municipality as "legally incorporated or duly authorized association of inhabitants of limited area for local governmental or other public purposes; . . . [a] city, borough, town, township, or village"); see also 62 C.J.S. Municipal Corporations § 2 (2002) (explaining that word "municipal" means of or pertaining to city or town or its corporate government, and defining municipality as a legally incorporated or duly authorized association of inhabitants or particularly designated place or limited territorial area, established for prescribed local governmental and public utility or other public purposes). Clearly, as Ms. Lederer concedes, the OUC is not a municipality. The OUC does not have citizens or a geographically-defined area and is not a general purpose unit of government.
Further, the OUC does not share an identity with the City. The OUC is purely a creation of the Florida Legislature. When the Legislature created the OUC, it was made "part of the government of the City of Orlando," see ch. 9861, § 1, Laws of Fla. (1923), but endowed with "substantial autonomy to operate independently from the city government," see Gaines, 450 So.2d at 1180. Thus, while the OUC may be a public utility designated as part of the City's government, it remains a distinct legal entity that operates mostly independently of the City.
For these reasons, we conclude that the OUC is not a city department, as argued by Ms. Lederer. See Cobo v. O'Bryant, 116 So.2d 233, 237 (Fla.1959) (holding that Legislature had absolute discretion to grant powers to operate and manage city utility to independent utility commission outside city's control, and in doing so, Legislature merely created "a municipal agency to operate the publicly owned property for the benefit of the public"). We premise that conclusion on the OUC's status as a legislatively created body with substantial autonomy to operate independently of the City. See 1 McQuillin, The Law of Municipal Corporations, § 2.30 (3d ed. 2008) (explaining that department created by state is generally considered separate entity while department created by city is not entity separate form municipality even though distinct city department); see also Fla. City Police Dep't v. Corcoran, 661 So.2d 409, 410 (Fla. 3d DCA 1995) (explaining that although city police department is integral part of city government, it is not entity subject to suit because it is merely "vehicle through which the city government fulfills its policing functions . . ."); N. Miami Beach Water Bd. v. Gollin, 171 So.2d 584 (Fla. 3d DCA 1965) (finding city water board was not autonomous body, separate and apart from city).
We recognize that the distinction between a municipal department and a municipal or quasi-municipal agency is not always clear. Generally, a municipal department is not a separate legal entity and *526 does not have the capacity to sue or be sued. Examples of such subordinate entities comprising an integral part of a municipality would generally include a police or fire department, planning department or city attorney's office. 56 Am.Jur.2d Municipal Corporations § 787 (2008). Conversely, districts and authorities created by the Legislature for particular purposes are generally classified as "special purpose" units, "special districts," or municipal or quasi-municipal agencies to distinguish them from local government units that are more self-governing, or "general purpose" units of local government. 1 McQuillin, The Law of Municipal Corporations, § 2.28 (3d ed. 2008). Such special purpose units or quasi-municipal bodies may be municipal agencies, but not municipal departments. They are bodies that possess a limited number of specific powers and have only those powers that have been expressly granted to them by the Legislature or that are necessary for them to discharge their duties and carry out their objects and purposes. 1 McQuillin, The Law of Municipal Corporations, § 2.13 (3d ed. 2008).[3]
Our conclusion that the OUC is not a municipality or a municipal department resolves the issue before us. As a result, we need not determine precisely what the OUC is. We simply need to determine that it is not a municipality or municipal department. Consequently, we agree with McSwain, and hold that Ms. Lederer was required to provide notice of her claim to the Department within three years after the accident occurred. Since she failed to do so, the trial court properly granted summary judgment in the OUC's favor. See Motor v. Citrus County Sch. Bd., 856 So.2d 1054, 1055 (Fla. 5th DCA 2003) (finding that summary judgment is appropriate when plaintiff failed to provide required notice within three-year deadline as notice to Department is essential condition precedent to maintaining cause of action); Wall v. Palm Beach County, 743 So.2d 44 (Fla. 4th DCA 1999) (affirming summary judgment in favor of county on grounds that claimant failed to give notice of intent to sue Department pursuant to section 768.28(6)).
AFFIRMED.
LAWSON, J., concurs.
TORPY, J., dissents, with opinion.
TORPY, J., dissenting.
Appellant's suit is based on the allegation that an OUC employee failed to properly replace the water meter lid causing her to be seriously injured when she stepped on the meter cover in her yard and fell. Under the special act that created the OUC, the water meter belonged to the City of Orlando and the employee was an employee of the City. The Act provides that the OUC:
[S]hall have full authority over the management and control of the electric light and water works plants of the City of Orlando and shall elect and discharge at their pleasure all employees of the City whose services are performed in any manner in connection with said electric light and water works plants or the operation thereof.
Ch. 31092, § 1, Laws of Fla. (1955) (Emphasis added); see Ch. 9861, § 6, Laws of Fla. (1923). The Act describes the OUC as "a part of the government of the City of Orlando. . . ." Ch. 9861, § 1, Laws of Fla. (1923). Despite this clear designation of *527 the status of the OUC, the majority cites our decision in Gaines for the proposition that the OUC is only a part of the City for some purposes. Presumably, the majority concludes that it is not a part of the City for the purposes of this case. Even assuming that Gaines was correct, in my view, for purposes of who is entitled to statutory notice of claims for injury caused by the negligent maintenance of city property by a city employee, both of which are under the managerial control of the OUC, the OUC is clearly a part of the City and in this circumstance no different than any other municipal department. As such, notice to it should be the same as notice to the City. Just as notice to the whole would include all of its parts, an exception to notice applicable to the whole should apply to the part.
I would reverse.
NOTES
[1] Specifically, the statute provides in relevant part:

(6)(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Spaceport Florida Authority, presents such claim in writing to the Department of Insurance, within 3 years after such claim accrues and the Department of Insurance or the appropriate agency denies the claim in writing; except that, if such claim is for contribution pursuant to s. 768.31, it must be so presented within 6 months after the judgment against the tortfeasor seeking contribution has become final by lapse of time for appeal or after appellate review or, if there is no such judgment, within 6 months after the tortfeasor seeking contribution has either discharged the common liability by payment or agreed, while the action is pending against her or him, to discharge the common liability.
(b) For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues.
§ 768.28(6)(a)-(b), Fla. Stat. (2001).
[2] To the extent that City of Tampa held that municipalities are not entitled to the same sovereign immunity as the state and its subdivisions, that holding has been superseded by section 768.28, Florida Statutes. See Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1015-16 (Fla.1979).
[3] Although not legally determinative, it appears that Ms. Lederer also believed that the OUC was a municipal agency, and not a municipal department, as argued on appeal, since she filed the instant lawsuit only against the OUC and not the City.